# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| GUILLERMO ESCOBEDO,<br><br>　　　　Petitioner,<br><br>vs.<br><br>MARK LUND,<br><br>　　　　Respondent. | No. C10-4111-MWB<br><br>**REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254** |

## *I. FACTUAL AND PROCEDURAL BACKGROUND*

Guillermo Escobedo was charged in Sioux County, Iowa, District Court with first-degree murder, willful injury, and aggravated assault. After a jury trial where he was tried jointly with co-defendant Cesar Herrarte, Escobedo was convicted on all charges and sentenced to life without parole on September 22, 1995. He appealed to the Iowa Court of Appeals, which upheld his conviction. The Iowa Supreme Court denied further review.

Escobedo then filed an application for post-conviction relief ("PCR"), which was denied. Escobedo appealed, and the Iowa Court of Appeals denied relief. The Iowa Supreme Court denied further review.

On April 26, 2005, Escobedo filed a *pro se* petition for habeas corpus in federal court under 28 U.S.C. § 2254. Rockne Cole was appointed to represent Escobedo and discovered his petition contained unexhausted claims. On October 26, 2005, the Honorable Judge Linda R. Reade dismissed the action without prejudice. *See Escobedo v. Burger*, No. 05-4039-LRR; Doc. No. 15.

Escobedo's second state post-conviction application was denied initially and on appeal on March 18, 2010. The Iowa Supreme Court denied further review.

On November 10, 2010, Escobedo filed a habeas corpus petition in this court under 28 U.S.C. § 2254. Doc. No. 1. Escobedo's motion to appoint counsel was granted and Rockne Cole continued to represent Escobedo. Doc. No. 9. An amended petition was filed on February 1, 2011. Doc. No. 14. On January 31, 2012, Escobedo filed a brief on the merits. Doc. No. 35. An amended and substituted brief was filed on February 2, 2012. Doc. No. 38. The respondent ("the State") filed a response on March 27, 2012. Doc. No. 41. The matter is now fully submitted.

The factual background for Escobedo's trial was summarized by the Iowa Court of Appeals in its opinion on Escobedo's direct appeal:

> Escobedo and co-defendant Cesar Herrarte stabbed two young men with meat-packing knives after a fight broke out at a party on January 14, 1995. The party took place at a house in Hawarden, Iowa, and was attended by a number of young people. One of the teenage stabbing victims died a short time later. His wounds were so deep and severe that numerous vital organs and arteries in the chest and stomach area were cut or severed and some of his abdominal contents were expelled from his body.

*State v. Escobedo*, 573 N.W.2d 271, 274-75 (Iowa Ct. App. 1997).

The events surrounding the end of Escobedo's and Herrarte's trial form the basis of Escobedo's petition. Escobedo was represented by attorney Steven Pals and Herrarte was represented by Gregory Jones, Chief Public Defender for Woodbury County. Pals and Jones made several objections during and after the prosecutor's closing argument. They objected to the prosecutor's use of "Hispanics" and "white guys" to refer to the defendants and witnesses. Trial Tr. 81 (Sept. 21, 1995). They also objected to the prosecutor's inference that the defendants were using drugs the night of the crime and the comment that the defendants' rights had been "scrupulously defended." *Id.* at 81-82. They objected to the prosecutor saying "you need to be awfully drunk not to have a clue about what happened" in explaining the instruction about the defense of intoxication. *Id.* at 83. Finally, they objected to an overhead

transparency the prosecutor had mistakenly shown the jury which read: "Innocent people don't lie." *Id.* Counsel for Escobedo and Herrarte moved for a mistrial arguing prosecutorial and prejudicial misconduct. *Id.* at 85. The trial judge denied the motion for a mistrial, but when the jury returned from recess he gave the following instructions:

> In the State's argument I have previously mentioned certain matters that you must disregard. The prosecutor, in the Court's opinion, went over the line. And the Court is trying to make sure that those matters that he brought up are not used as a basis of your decision.
>
> The recess lasted a little longer than it would have except the Court needed to take up additional matters that were brought in – brought up in the prosecutor's argument which the Court considers went over the line and has nothing to do with this case.
>
> First he referred to the defendants as Hispanics and to the other people as white guys. During the voir dire of the jury I read an instruction with regard to the ethnicity of the defendants and that that matter has no place in this trial. Those comments have no place either and should be disregarded.
>
> Also there was a reference towards drugs. You have heard the evidence, and you can determine what evidence there is as to drugs. You are not to be swayed with regard to your verdicts by comments made by the prosecutor in that vein.
>
> In addition, the prosecutor made the comment that the defendants' attorneys, the defendants were scrupulously defended by their attorneys. The word scrupulously has no place in this trial. You are to disregard any effect of that.
>
> In addition, the prosecutor made the comment if you need to be awfully – "You need to be awfully drunk not to know what – not to have a clue about what happened." There is nothing in the evidence that supports such a comment, and the comment is to be disregarded. And you are not to consider it in your determination in this case.
>
> Finally, at one point the prosecutor left a comment on the projector and it flashed briefly. I don't know whether you saw it or not.

3

> Did you see it? It referred to innocent people. I take it you saw. You saw it back there. And you saw it.
>
> That comment and it is – since – some of you saw it, I'll tell you what it was so – because this is the most upsetting thing of all is that the comment is "Innocent people don't lie." That comment is improper. You are to completely disregard it. And you are to give no effect to it whatsoever. It's a saying. It has no basis in fact. And it is not part of the evidence, so do not give it any consideration.
>
> Now, you can understand by the tone of my voice that I'm upset that these things occurred. I told you I want a fair trial. I think the prosecutor went over the line. And I tell you that in order that you can disregard those comments and give them no weight whatsoever.

*Id.* at 103-06.

After six days of evidence and argument, the jury began deliberating around 3:00 p.m. on September 21, 1995. The jury deliberated into the evening and was excused around 10:00 p.m. with instructions to return at 9:00 a.m. the next morning to resume deliberations. *Escobedo*, 573 N.W.2d at 275.

The next morning, the county attorney informed the trial judge he recently received information from a person who reported hearing a juror make racial remarks about Escobedo at a bar a few nights earlier. The trial judge conducted an in camera inquiry into the report, which included testimony from the juror and the informant. *Id.* Trial Tr. 3-12 (Sept. 22, 1995). In chambers the judge said, "Perhaps we should dismiss the juror" and Mr. Jones responded, "I will have no problem with that." *Id.* at 12. Court reconvened with the jury and the trial judge dismissed the juror. *Id.* at 13. The judge stated, "I intend to use an alternate Paula Jacobsma." *Id.* at 14. Mr. Pals responded "yes" and Mr. Jones said "mm-hmm." *Id.* The alternate juror was summoned and replaced the dismissed juror. Deliberations resumed after the trial judge instructed the jury to begin their deliberations anew. The jury returned its verdict later in the day. *Escobedo*, 573 N.W.2d at 275.

4

During the proceedings on Escobedo's first post-conviction petition, Escobedo testified that he knew about the juror substitution because his lawyer discussed it with him and he was present while the attorneys and judge discussed it. PCR Tr. 7-8. He stated his lawyer did not ask him whether he would agree with replacing a juror or if he instead wanted to request a mistrial. *Id.* at 9-10. Escobedo testified that he did not ask his attorney any questions about the situation. *Id.* at 15.

Jones testified that he realized that his client, Herrarte, had two options—a mistrial or continue deliberations. *Id.* at 38. He elaborated:

> My view was that we should continue with this jury and allow the jury to deliberate. That was my view, because I felt that it had been emphasized very strongly to the jury that racial conversations were not to be taken into account. I felt the State, because of [the prosecutor's] actions and the judge's reaction to them, lacked credibility with the jury. I felt that because of those things we had the best opportunity to have a jury that would be favorably inclined to believe that our clients acted in self-defense.
> 
> . . . .
> 
> I believed that the decision about whether or not to ask for a mistrial was a tactical decision and was mine alone after consulting with my client. I did talk with Mr. Herrarte about the possibility of a mistrial and discussed with him the fact that I thought the jury would be fair, and at that time I did make the agreement with [the trial judge] that we would replace the juror.

*Id.* at 38-39.

Pals testified that he evaluated the situation and did not believe a mistrial was the best option. *Id.* at 58. He stated:

> I felt we had gotten as much as we could get from the State's witnesses during the course of trial to establish our defense. And then with how the events went during final argument, I didn't think those matters would recreate themselves if there was a second trial.

*Id.* at 58-59. Pals stated he thought substituting the juror so that the deliberations could go forward was the best option. He explained:

5

> The reason for that was you have eliminated the potential bias from [the dismissed juror] from the jury, as best you were able, and gave the jury a chance to go back and start over with deliberations, as I believe Judge Dandos directed them to do, and you still had the impact of what happened during the State's final arguments waging in the defendant's favor, in my estimation.

*Id.* at 60-61. Pals further testified that he discussed the issue and the options—including a mistrial—with his client, but ultimately believed the decision as to whether to seek a mistrial was a tactical decision to be made by him and Jones. *Id.* at 64, 67.

In his amended petition, Escobedo listed four grounds for post-conviction relief. Doc. 14. The State objected to three of those grounds in its answer. Doc. 17. In Escobedo's amended and substituted merits brief, Escobedo withdrew the three grounds identified by the State conceding they were not properly preserved in state court or presented as federal constitutional claims. Doc. No. 38 at 3. Thus, Escobedo's remaining ground for relief is ineffective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution for his counsel's failure to seek a mistrial after the court substituted a juror during deliberations.

## *II. STANDARD OF REVIEW*

Escobedo brings this petition pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Section 2254(a) provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Under AEDPA, federal courts apply a "deferential standard of review" to the state court's determinations of law and fact if the state court adjudicated the claim on the merits. *Taylor v. Bowersox*, 329 F.3d 963, 967-68 (8th Cir. 2003). Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Escobedo brings his petition under section 2254(d)(1). There are two categories of cases under this section that may provide a state prisoner with grounds for federal habeas relief: (1) if the relevant state-court decision was "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) if the relevant state-court decision "involved an *unreasonable application* of . . . clearly established Federal law, as determined by the Supreme Court of the United States." *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) (quoting 28 U.S.C. § 2254(d)(1) (emphasis added). Escobedo brings his claim under the "unreasonable application" prong.

A state court can violate the "unreasonable application" clause of section 2254(d)(1) in two ways: (a) where "the state court identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case"; or (b) where "the State court either unreasonably extends a legal principle from [Supreme] Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

The state court reviews a post-conviction relief petition based on ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, the person challenging a conviction must

7

show that (1) counsel provided deficient assistance to the extent that "counsel's representation fell below an objective standard of reasonableness" and (2) there was prejudice as a result. *Id.* at 688. The errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and the defendant was deprived of a fair trial. *Id.* at 687. The court applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Federal habeas courts must then find that a state court's application of *Strickland* was unreasonable under section 2254(d) to grant habeas relief. This is also a highly deferential inquiry because "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785-86, 178 L. Ed. 2d 624 (2011) "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* Therefore, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 131 S. Ct. at 786 (citing *Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003)).

For a claim to be successful under section 2254(d)(1), "[i]t is not enough that the state court applied clearly established federal law erroneously or incorrectly—the application must additionally be unreasonable." *Jones v. Wilder-Tomlinson*, 577 F. Supp. 2d 1064, 1073 (N.D. Iowa 2008) (Bennett, J.) (citing *Williams,* 529 U.S. at 411; *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) ("an unreasonable application is different from an incorrect one.")). *See Ringo v. Roper*, 472 F.3d 1001, 1003 (8th Cir. 2007) (same). "[A] federal court may not grant the petition unless the state court decision, viewed objectively and on the merits, cannot be

justified under existing Supreme Court precedent." *Jones*, 577 F. Supp. 2d at 74 (citing *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999)); *see Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007) (to be overturned, the state court's application of federal law must have been "objectively unreasonable") (citing *Lyons v. Luebbers*, 403 F.3d 585, 592 (8th Cir. 2005)).

The petitioner bears the burden of showing that the state court's ruling on the claim presented was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87. "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)).

### III. DISCUSSION

Escobedo argues his Sixth Amendment right to effective assistance of counsel was violated because the Iowa Court of Appeals unreasonably applied *Strickland* when it held that Escobedo had not been denied effective assistance of counsel when his attorney failed to move for a mistrial after a juror was substituted during deliberations. *See Escobedo v. State*, No. 03-1913, 2004 WL 2804848, at *1 (Iowa Ct. App. Dec. 8, 2004). Escobedo specifically argues the Iowa Court of Appeals unreasonably applied *Strickland* because his attorney should have moved for a mistrial when there was clear error in substituting a juror during deliberations and the court applied the wrong prejudice inquiry in finding that Escobedo could not demonstrate a reasonable likelihood that the result of a second trial would have been any different. He asserts he only needed to demonstrate a reasonable probability that a mistrial would have been granted to establish prejudice.

The State argues that the Iowa Court of Appeals reasonably applied *Strickland* in finding that Escobedo's attorney made a strategic decision not to ask for a mistrial and it used the correct prejudice inquiry to determine that Escobedo was not prejudiced because he could not demonstrate a reasonable probability that the ultimate verdict would have been any different but for his attorney's alleged deficient performance.

## A.   *Deficiency of Performance*

Escobedo argues that the Iowa Court of Appeals unreasonably applied *Strickland* based on the circumstances surrounding his attorney's decision to continue with a substituted juror and not move for a mistrial. He argues it was clear error under Iowa law to substitute a juror during deliberations and cites Iowa R. Crim. P. 2.18(15) (2011)[1] and the Iowa Court of Appeals decision[2] on his direct appeal for authority. Escobedo asserts his trial attorney did not know he was entitled to a mistrial after the judge suggested replacing a juror during deliberations. To demonstrate this, Escobedo argues it was inconsistent for his attorney to insist on a mistrial because of the prejudicial effects of the prosecutor's closing statement but then elect to forego an automatic mistrial the next day when there was "clear error" from the juror substitution. Escobedo attributes this inconsistency to his attorney's lack of knowledge that he was entitled to an automatic mistrial under Iowa rules.

Escobedo also asserts that if his attorney had known Escobedo was entitled to a mistrial, he would have made more of a record rather than simply responding "yes"

---

[1] The relevant portion of the rule reads: "Alternate jurors shall, in the order they were drawn, replace any juror who becomes unable to act, or is disqualified, before the jury retires, and if not so needed shall then be discharged."

[2] "We agree with Escobedo the district court was not authorized to replace a juror during deliberations. We also agree Escobedo would have been entitled to a mistrial after the trial court dismissed the juror during the deliberations. However, Escobedo did not request the trial court to declare a mistrial, but instead acquiesced in the replacement of the dismissed juror with a previously dismissed alternate juror." *State v. Escobedo*, 573 N.W.2d 271, 276 (Iowa Ct. App. 1997).

when the trial judge indicated he planned to use the alternate juror. Finally, Escobedo contends his attorney did not confer with him about proceeding with an alternate juror, inferring that if this was a strategic decision, as the State claims, rather than ignorance of the rules, a competent attorney would have discussed it with his client. For these reasons, Escobedo argues the Iowa Court of Appeals unreasonably applied *Strickland* in finding that this was a tactical decision by his attorney rather than deficient performance for failing to recognize that a clear error had occurred and an automatic mistrial was available.

The State argues the Iowa Court of Appeals reasonably applied *Strickland* in finding Escobedo's counsel made a strategic and tactical decision to forego a mistrial motion and proceed by replacing the dismissed juror with an alternate. It references both attorneys' testimony in which they stated they knew a mistrial request was an option, but they chose not to request one because of the advantage obtained by the trial judge's criticism of the prosecutor. *Escobedo*, 2004 WL 2804848, at *2. They testified to a belief that this situation would not likely be replicated in a second trial, and they were satisfied with the way the evidence had come on. *Id.*

The State disagrees that it was clear error mandating an automatic mistrial to substitute a juror during deliberations. The State points out that prior to the decision on Escobedo's direct appeal, no Iowa case had construed Rule 2.18(15) to entitle a defendant to a mistrial if a juror is dismissed after deliberations commence.[3] The State also notes that under the rule set forth in the *Escobedo* decision, a defendant may acquiesce in the replacement of a dismissed juror with an alternate after deliberations have begun. It cites *State v. Estabrook*, No. 00-1129, 2001 WL 1578487, at *2 (Iowa Ct. App. Dec. 12, 2001), which discusses *Escobedo* and states: "We agree with Estabrook's contention that the district court was not authorized to replace a juror

---

[3]Indeed, the State suggests that even in the *Escobedo* decision, the comments by the Iowa Court of Appeals concerning a mistrial were dicta.

11

during deliberations unless Estabrook acquiesced in the replacement of the dismissed juror with an alternate."

The State further references attorney Jones's testimony that he had been involved in criminal trials on about six prior occasions in which a juror was replaced during deliberations. The State maintains that a mistrial under these circumstances was an option, not a mandate, and the defense attorneys and Iowa Court of Appeals reasonably analyzed it as such. For these reasons, the State argues the Iowa Court of Appeals reasonably applied *Strickland* in concluding Escobedo's attorney made a reasonable strategic decision in choosing to forego a mistrial motion.

As stated above, Escobedo must demonstrate that the Iowa Court of Appeals decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). The clearly established law at issue here is the test identified in *Strickland*. In evaluating deficient performance under *Strickland*, the state appellate court must consider whether counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The Supreme Court has declined to articulate more specific guidelines, emphasizing "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* Because the *Strickland* standard is a general standard, a state court has wide latitude to determine that a defendant has not satisfied that standard. *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L. Ed. 2d 251 (2009). The state appellate court decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" for this court to find that it was unreasonable. *Harrington*, 131 S. Ct. at 786-87.

The Iowa Court of Appeals concluded that Escobedo's attorney made a strategic and tactical decision to proceed with a substituted juror and continue deliberations rather than move for a mistrial. The court considered Pals's testimony that he thought

the trial had gone well for his client and he had discussed the options of mistrial or having the jury continue deliberations with his client and co-counsel for Herrarte.[4] *Escobedo*, 2004 WL 2804848, at *2. The court also considered Pals's testimony that he was disinclined to seek a mistrial because he "felt [they] had gotten as much as [they] could get from the State's witnesses during the course of the trial to establish [their] defense and he "didn't think these matters would recreate themselves if there was a second trial." *Id.* The court acknowledged Pals's agreement with Jones's assessment that he wanted the jury to continue deliberating because the trial court judge had strongly admonished the jury to disregard the prosecutor's inappropriate statements in closing arguments, which could damage the State's credibility, and he felt the jury was favorably inclined to believe the defendants had acted in self-defense. *Id.* The court concluded:

> Upon our de novo review, we concur in the postconviction court's conclusion that trial counsel's choices were reasonable strategic and tactical decisions. The fact that the decision may have, with hindsight, not achieved their desired result is irrelevant. Because the decision to not seek a mistrial was based on the professional judgment of two experienced trial attorneys, Escobedo and Herrarte cannot establish that their counsel breached an essential duty.

*Id.*

The Iowa Court of Appeals did not unreasonably apply *Strickland* in concluding that Escobedo's attorney made a reasonable strategic decision to proceed with an alternate juror and forego a mistrial motion. The court's findings concerning Pals's and Jones's testimony refute Escobedo's arguments that his attorney did not know a mistrial was an option or that it was inconsistent for his attorney to forego a mistrial motion

---

[4]The court acknowledged the lack of record and Escobedo's contrary testimony noting, "While Escobedo and Herrarte assert that there was no opportunity for counsel to consult with them before they "acquiesced" to the seating of the alternate juror, the record does not indicate whether there was a pause in the proceedings or what may have previously transpired off the record." *Escobedo*, 2004 WL 2804848, at *2, n.1.

when he had moved for one the day before. Even if the attorneys did not know they were entitled to an automatic mistrial, as Escobedo argues, the testimony clearly establishes that they evaluated a mistrial as an option and made a strategic decision not to pursue it. A determination of factual issues made by a State court shall be presumed to be correct by the federal courts and is binding in a section 2254 action if fairly supported by the record, unless rebutted by clear and convincing evidence of error. 28 U.S.C. § 2254(e)(1); *Summer v. Mata*, 449 U.S. 539, 101 S. Ct. 764, 66 L. Ed. 2d 722 (1981). Escobedo has not rebutted the presumption.

The Iowa Court of Appeals also reasonably applied *Strickland* in recognizing that counsel is given "wide latitude" in making tactical decisions which are "virtually unchallengeable". *Strickland*, 466 U.S. at 689-90. Elaborating on this deferential standard, the *Strickland* court stated:

> [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

*Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164, 100 L. Ed. 83 (1955)). In applying *Strickland*, the Iowa Court of Appeals reasonably concluded that the choice to continue deliberations with a substituted juror rather than request a mistrial was within the wide range of reasonable professional assistance.

### B.    *Prejudice*

While the Iowa Court of Appeals held Escobedo did not demonstrate deficient performance by his attorney, the court went on to analyze whether Escobedo would have been prejudiced had he been able to demonstrate deficient performance. The court held:

> [W]e further conclude neither Escobedo nor Herrarte can establish prejudice. The evidence against them was strong, including the testimony of various eye witnesses. There is no reasonable likelihood the result of a

> second trial would have been any different. We reject the contention that Escobedo and Herrarte need only show there was a reasonable probability the mistrial would have been granted, and not that there was a reasonable probability the ultimate verdict would have been different. In *Ledezma*, our supreme court reasoned that under *Strickland*, "different result" requires a reasonable probability that a different verdict would have been reached or that the factfinder would have possessed a reasonable doubt. *Ledezma*, 626 N.W.2d at 134.

*Escobedo*, 2004 WL 2804848, at *2. Escobedo contends the Iowa Court of Appeals unreasonably applied the wrong standard of prejudice. He argues that to demonstrate prejudice, he only must show there was a reasonable probability that a motion for mistrial would have been granted but for his attorney's deficient performance.

Under *Strickland*, prejudice exists when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The parties disagree over the interpretation of "result of the proceeding" in this context. The State argues it should be interpreted as the decision rendered or the presence of reasonable doubt in the mind of the factfinder, which is consistent with the Iowa Supreme Court's holding in *Ledezma v. State*, 626 N.W.2d 134 (Iowa 2001). Escobedo argues this standard is too restrictive and the Supreme Court has found prejudice even where the jury would have convicted the defendant regardless of the error.

Escobedo argues the Iowa Court of Appeals unreasonably failed to extend Supreme Court precedent to this context. Escobedo compares the failure to request a mistrial under these circumstances to the failure to file a notice of appeal without the defendant's consent, *see Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000), or the failure to advise the defendant of the consequences of entering a guilty plea, *see Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). In *Roe v. Flores-Ortega*, the court held that a defendant could show prejudice from counsel's failure to consult with him about an appeal, if he could

15

demonstrate a reasonable probability that but for counsel's deficient performance he would have timely appealed. *Flores-Ortega*, 528 U.S. at 484. In *Hill v. Lockhart*, the court found that to satisfy the "prejudice" requirement, the defendant would have to show there was a reasonable probability that, but for his counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59. Escobedo argues that to satisfy the prejudice requirement here, he only needs to show there was a reasonable probability that, but for this counsel's errors, he would have received a mistrial.

An attorney's failure to request a mistrial is different than an attorney's failure to file an appeal without the defendant's consent or the failure to advise the defendant about pleading guilty. The decision to appeal or plead guilty belongs to the defendant. *See Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) (identifying the fundamental decisions that are under the ultimate authority of the defendant as the decision "to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."). The decision whether to move for a mistrial is generally considered a strategic decision that is left to counsel. *United States v. Washington*, 198 F.3d 721, 723 (8th Cir. 1999); *see also United States v. Chapman*, 593 F.3d 365, 367-69 (4th Cir. 2010) (holding that counsel was not ineffective for ignoring client's direction to accept the district court's offer of a mistrial). It was not unreasonable for the Iowa Court of Appeals to refuse to extend the prejudice standards from *Hill* and *Flores-Ortega* to the context of failing to move for a mistrial.

Escobedo also cites a District Court case from the District of Columbia in which the court held "the reasonable probability—actually the certainty—that a mistrial in this case would have been granted is sufficient to demonstrate prejudice." *U.S. v. Ramsey*, 323 F. Supp. 2d 27, 42 (D.D.C. 2004) (internal citations omitted). Ramsey's attorney failed to seek a mistrial after a damaging statement taken in violation of Ramsey's *Miranda* rights was revealed to the jury. *Id.* at 32. The statement was suppressed after a hearing outside the presence of the jury, and Ramsey's attorney only requested an

16

instruction to the jury, expressly stating he was not moving for a mistrial. *Id.* The court in *Ramsey* was persuaded by *Hill* and *Flores-Ortega* and found Ramsey was denied a procedural right because it could be determined that the court would have granted a motion for mistrial. *Id.* at n.9. The court cited *Williams v. Taylor* for the proposition that it did not matter whether Ramsey's conviction was "fair," because the deprivation of a substantive or procedural right to which the law entitled him was enough to establish prejudice. *Williams v. Taylor*, 529 U.S. at 393.

The State argues that *Ramsey* is not "clearly established" Supreme Court precedent, and because there is no Supreme Court precedent that articulates a precise standard of prejudice in evaluating counsel's failure to request a mistrial under these circumstances, the Iowa Court of Appeals reasonably interpreted *Strickland* to require Escobedo to demonstrate a reasonable likelihood that a different verdict would have been reached in a second trial. The State correctly points out that even if this court were to accept Escobedo's standard for prejudice, "[i]t is not enough that the state court applied clearly established federal law erroneously or incorrectly—the application must additionally be unreasonable." *Jones v. Wilder-Tomlinson*, 577 F.Supp.2d 1064 (N.D. Iowa 2008).

The court finds the Iowa Court of Appeals was reasonable in holding that prejudice required a showing of a reasonable probability that a different verdict would have been reached in a second trial, but for counsel's alleged error. As the State pointed out, there is no "clearly established" Supreme Court precedent on the standard of prejudice from counsel's failure to move for a mistrial that was warranted under state procedural rules. While *Ramsey* is persuasive, it can be distinguished in many ways—most important of which is the standard of review. The District Court in that case reviewed Ramsey's section 2255 petition directly under *Strickland*. The standard of review before this court is whether the Iowa Court of Appeals decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). This

17

additional level of deference means that the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" for this court to find that it was unreasonable. *Harrington*, 131 S. Ct. at 786-87. Because there is no clearly established federal law for the prejudice standard regarding an attorney's failure to request a mistrial under these circumstances, the Iowa Court of Appeals did not unreasonably apply *Strickland* or unreasonably fail to extend federal law in requiring Escobedo to demonstrate a reasonable probability that a different verdict would have been reached in a second trial.

The Iowa Court of Appeals also reasonably concluded that Escobedo was not prejudiced under this standard as a result of the alleged error by his counsel. The court reasoned that the evidence against Escobedo was strong and included testimony from various eyewitnesses. It reasonably decided that even if Escobedo had established deficient performance by his counsel in failing to move for a mistrial, he was not prejudiced as a result of that deficiency.

### *IV. CONCLUSION*

For the reasons set forth above, **IT IS RESPECTFULLY RECOMMENDED** that defendant Guillermo Escobedo's petition pursuant to 28 U.S.C. § 2254 (Doc. No. 14) be **denied**.

Any party who objects to this Report and Recommendation must serve and file specific, written objections by **September 21, 2012**. Any response to the objections must be served and filed by **October 5, 2012**.

**IT IS SO ORDERED.**

**DATED** this 6th day of September, 2012.

                              _____
                              LEONARD T. STRAND
                              UNITED STATES MAGISTRATE JUDGE
                              NORTHERN DISTRICT OF IOWA