**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

GUILLERMO ESCOBEDO,

               Petitioner,

vs.

MARK LUND,

               Respondent.

No. C 10-4111-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING OBJECTIONS
TO MAGISTRATE JUDGE'S
RECOMMENDED DISPOSITION OF
STATE PRISONER'S *HABEAS*
PETITION**

---

**TABLE OF CONTENTS**

I.    **INTRODUCTION**...............................................................**5**
    A.   *Factual Background* ....................................................5
    B.   *Procedural Background* ...............................................6
         1.   *State proceedings* ...............................................6
             a.   *Conviction and direct appeal*....................... 6
             b.   *Post-conviction relief proceedings* ............... 10
                 i.   *The district court's decision* ............. 10
                 ii.   *The appellate court's decision*.......... 13
         2.   *Federal Proceedings* ....................................... 16
             a.   *Escobedo's § 2254 Petitions*........................ 16
             b.   *The Report And Recommendation*.................. 17
             c.   *Objections to the recommended disposition* ................. 20

II.   **LEGAL ANALYSIS** ................................................. **21**
    A.   *Review Of A Report And Recommendation*................................. 21
         1.   *The applicable standards*................................. 21
          2.   *De novo review*........................................... 22
          3.   *"Clear error" review*................................. 23
    B.   *Federal Habeas Relief* ............................................. 24
         1.   *"Exhausted" and "adjudicated" claims*............................. 26

                *a.    The    "exhaustion"   and   "adjudication"*                       *requirements* ............................................................. 26

                *b.    Limitations on relief on "exhausted" claims* ............... 28

        *2.    The § 2254(d)(1) standards* ............................................. 29

                *a.    The "contrary to" clause* ........................................ 31

                *b.    The "unreasonable application" clause* ..................... 31

                *c.    The effect of § 2254(d)(1) deficiencies in the*                       *state court decision* ............................................... 33

        *3.    The § 2254(d)(2) standard* ............................................. 34

        *4.    De novo review of issues not reached by the state*              *court* ............................................................................. 35

    *C.    "Clearly Established Federal Law" For "Ineffective Assistance" Claims* ................................................................. 35

        *1.    The Strickland standard* ................................................. 36

        *2.    Strickland's "deficient performance" prong* ........................ 37

        *3.    Strickland's "prejudice" prong* ....................................... 40

    *D.    Escobedo's Objections To The "Deficient Performance" Analysis* ............................................................................... 40

        *1.    The state court's rationale* ............................................. 41

        *2.    Escobedo's first objection: unreasonable factual determinations* ................................................................ 41

        *3.    Escobedo's second objection: mistaking a legal determination for a factual finding* ...................................... 46

        *4.    Escobedo's third objection: unreasonable application of Strickland* ............................................... 48

                *a.    Escobedo's argument* ........................................... 48

                *b.    Application of the "deficient performance" standards* ............................................................... 49

    *E.    Escobedo's Objection To The "Prejudice" Analysis* ..................... 61

        *1.    The state court's rationale* ............................................. 62

        *2.    Escobedo's argument* ................................................... 63

        *3.    Analysis* ....................................................................... 63

                *a.    Context-specific determination of "prejudice"* ............. 64

                *b.    Failure to apply the principle in a new context* ............ 67

                *c.    De novo consideration* .......................................... 68

    *F.    Appropriate Relief* ................................................................ 70

**III.    CONCLUSION** .......................................................................... 70

In this action for federal *habeas* relief pursuant to 28 U.S.C. § 2254, a state prisoner, petitioner Guillermo Escobedo, challenges his state conviction in 1995 for first-degree murder in the stabbing death of another young man at a party. As the United States Supreme Court explained more than four decades ago, "There is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law."[1] Indeed, the "Great Writ" is the only common-law writ explicitly protected by the United States Constitution.[2] At the same time, "the writ of habeas corpus has historically been regarded as an extraordinary remedy,"[3] and I have treated it that way in my own *habeas* cases involving either state or federal prisoners in almost 19 years as a United States district court judge.[4] In 178 cases by federal prisoners seeking *habeas* relief

---

[1] *Harris v. Nelson*, 394 U.S. 286, 292 (1969).

[2] *Holland v. Florida*, ___ U.S. ___, ___, 130 S. Ct. 2549, 2562 (2010) (citing U.S. CONST., art. I, § 9, cl. 2).

[3] *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993).

[4] The numbers of *habeas* cases, by state and federal prisoners, that I have decided were determined by generating reports from the Northern District of Iowa's Case Management and Electronic Case Filing (CM/ECF) System. Unfortunately, CM/ECF does not record the specific disposition of such cases. Consequently, I determined the number of such cases in which I have granted *habeas* relief from several sources, including Westlaw, the District's West Knowledge Management (West KM) database, and the District's website.

pursuant to § 2255, I have granted relief in only 5.[5]  In cases by state prisoners seeking *habeas* relief pursuant to § 2254, I have been even more restrained:  In 297 such cases, I have so far granted *habeas* relief in only 3.[6]

---

[5] *See Johnson v. United States*, 860 F. Supp. 2d 663 (N.D. Iowa 2012) (granting *habeas* relief pursuant to § 2255 to a woman convicted of five murders in furtherance of a continuing criminal enterprise, in violation of 21 U.S.C. § 848(e), on only 4 claims of ineffective assistance of counsel, out of 64 claims for *habeas* relief that she asserted); *Umanzor v. United States*, Nos. C 11–4024–MWB, 8-4042-MWB, 2012 WL 124377 (N.D. Iowa Jan. 17, 2012) (granting *habeas* relief pursuant to § 2255 to a defendant convicted of drug offenses on his claims of ineffective assistance of counsel in advising him to plead guilty to the charged quantity of actual methamphetamine and in failing to move to withdraw his plea of guilty after counsel found out that he had handled less drugs than he had pleaded guilty to, but denying relief on a claim of ineffective assistance of appellate counsel); *Bauer v. United States*, Nos. C 08–2045–MWB, CR 06–2056–MWB, 2009 WL 3756439 (N.D. Iowa Nov. 4, 2009) (granting *habeas* relief pursuant to § 2255 to a defendant charged with being a felon in possession of a handgun on a claim that his trial counsel provided ineffective assistance by failing to provide him with competent advice regarding the merits of an appeal of his sentence, but denying relief on all other claims), *aff'd*, 626 F.3d 406 (8th Cir. 2010) (affirming sentence imposed after resentencing hearing granted as *habeas* relief); *United States v. Trujillo-Mendez*, No. CR03-4112-MWB, 2008 WL 424645 (N.D. Iowa Feb. 13, 2008) (granting *habeas* relief pursuant to § 2255 to a defendant for ineffective assistance of counsel in failing or refusing to file an appeal as requested, where the respondent conceded the claim); *United States v. Hernandez*, 450 F. Supp. 2d 950 (N.D. Iowa 2006) (granting *habeas* relief pursuant to § 2255 to a defendant convicted of a drug conspiracy charge on a claim of ineffective assistance of counsel in failing to advise him adequately about the benefits and consequences of going to trial versus pleading guilty, either with or without a plea agreement, but denying relief on other claims).

[6] *See Jones v. Wilder-Tomlinson*, 577 F. Supp. 2d 1064 (N.D. Iowa 2008) (granting *habeas* relief pursuant to § 2254 to a state prisoner convicted of possession with intent to deliver methamphetamine and failure to affix a drug tax stamp on a claim of ineffective assistance of trial counsel for failing to timely file a motion to suppress in relation to the evidence flowing from her arrest); *Wanatee v. Ault*, 101 F. Supp. 2d 1189 (N.D. Iowa 2000) (granting *habeas* relief pursuant to § 2254 to a state prisoner convicted of first-degree murder on a claim that ineffective assistance of counsel led

Here, Escobedo contends that his trial counsel provided ineffective assistance by failing to demand an "automatic" mistrial when the trial judge removed a juror after deliberations had started and, instead, acquiescing in replacement of the juror with an alternate. A magistrate judge recommended that Escobedo's § 2254 petition be denied, because Escobedo had failed to demonstrate that the state appellate court unreasonably denied his claim for post-conviction relief based on ineffective assistance of counsel. In his objections to the magistrate judge's recommendation, Escobedo challenges the magistrate judge's failure to find that the state appellate court reached unreasonable conclusions as to both the "deficient performance" and the "prejudice" prongs of his constitutional claim. These objections have triggered my *de novo* review of parts of the report and recommendation.

## I.     INTRODUCTION
### A.     *Factual Background*

Absent rebuttal by clear and convincing evidence, I must presume that any factual determinations made by a state court in a state prisoner's criminal and post-conviction relief cases were correct. 28 U.S.C. § 2254(e)(1); *see Bell v. Norris*, 586 F.3d 624, 630 (8th Cir. 2009) (a federal court must deem factual findings by the state court to be presumptively correct, subject to disturbance only if proven to be incorrect by clear and convincing evidence). Furthermore, to determine whether or not any challenged factual findings are unreasonable, I must know what those factual findings were. Therefore, I begin with some of the findings of fact by the Iowa Court of

---

him to reject an offer to plead guilty to second-degree murder), *aff'd*, 259 F.3d 700 (8th Cir. 2001); *Spencer v. Ault*, 941 F. Supp. 832 (N.D. Iowa 1996) (granting *habeas* relief pursuant to § 2254 to a state prisoner convicted of drug and weapons charges on a claim that he was denied his Sixth Amendment right to self-representation).

Appeals concerning the circumstances leading to petitioner Guillermo Escobedo's conviction.

On Escobedo's direct appeal of his conviction, the Iowa Court of Appeals summarized the facts leading to his conviction, as follows:

> The State presented evidence Escobedo and co-defendant Cesar Herrarte stabbed two young men with meat-packing knives after a fight broke out at a party on January 14, 1995. The party took place at a house in Hawarden, Iowa, and was attended by a number of young people. One of the teenage stabbing victims died a short time later. His wounds were so deep and severe that numerous vital organs and arteries in the chest and stomach area were cut or severed and some of his abdominal contents were expelled from his body.

*State v. Escobedo*, 573 N.W.2d 271, 274-75 (Iowa Ct. App. Sept. 24, 1997).


### B.    Procedural Background

#### 1.    State proceedings

##### a.    Conviction and direct appeal

Escobedo (and co-defendant Herrarte) were tried before a jury in the Iowa District Court for Sioux County. As the Iowa Court of Appeals explained in its decision on Escobedo's direct appeal of his conviction, Escobedo's first concern was his ability to get a fair trial in Sioux County:

> Escobedo moved for a change of venue from Sioux County based on the small, rural nature of the jurisdiction, extensive media coverage, general public knowledge of the incident, his nationality and immigration status, and the lapse of time between the incident and the trial.

*Escobedo*, 573 N.W.2d at 275. The court explained in a footnote,

> The population of Sioux County in 1990 was 29,903. The county is served by several newspapers, including the Sioux City Journal which reaches an average of 4152 of the 10,300 households in Sioux County each day. The incident was covered extensively in all area news sources, especially in the local newspaper in Hawarden. The coverage included editorials and numerous letters to the editor. Escobedo was from Mexico and employed at a lamb kill plant in Hawarden. One letter was critical of "all the trouble that has happened in our community since Iowa Lamb Co. hired … illegal aliens." The population of Hawarden in 1990 was 2439.

*Escobedo*, 573 N.W.2d at 275 n.1. The trial court denied Escobedo's motion for change of venue. *Id.* at 275.

The Iowa Court of Appeals then recounted the circumstances leading to replacement of one of the trial jurors with an alternate after deliberations had begun, as follows:

> The case proceeded to trial with jury selection commencing September 6, 1995. The jury was impaneled on September 8. Three alternate jurors were selected. Prospective jurors were examined by the court as well as the attorneys.

> The evidence in the case was presented to the jury over the course of the following two weeks. The trial court then gave its instructions to the jury and closing arguments were presented by the attorneys. The alternate jurors were subsequently excused but told by the trial judge not to discuss the case until a verdict had been returned. The jury then retired to begin its deliberations shortly after 3 p.m. on September 21. They deliberated into the evening and were excused around 10 p.m. with instructions to return at 9 a.m. the next morning to resume their deliberations.

> The next morning, the county attorney informed the trial judge he recently received information from a person

who reported hearing a juror make racial remarks about Escobedo at a bar a few nights earlier. The trial judge conducted an inquiry into the report, which included testimony from the juror and the informant, and dismissed the juror from the case. He then told Escobedo's lawyer he "intended to use" the dismissed first alternate juror, and Escobedo's lawyer responded "yes." The alternate juror was summoned and replaced the dismissed juror. Deliberations resumed after the trial judge instructed the jury to begin their deliberations anew. The jury returned its verdict later in the day [September 22, 1995].

*Escobedo*, 573 N.W.2d at 275. Specifically, on the jury's verdict, "Escobedo was convicted of first-degree murder, willful injury, and assault." *Id*. at 274.

On direct appeal, Escobedo challenged the district court's denial of his motion for change of venue, based on unfavorable publicity indicating racial prejudice in the community and the demonstrated ineffectiveness of voir dire to eliminate such racial prejudice, in light of the incident requiring replacement of the trial juror. *Id*. at 276. The Iowa Court of Appeals rejected those arguments:

We fail to find presumed prejudice from our review of the record. Most of the media reports were factual in nature and restricted to the first two months following the incident. There were some letters printed in the newspaper critical of the impact of the illegal immigrant population in the community, but other letters and editorials were conciliatory and spoke favorably about immigrants in the community. Community and law enforcement leaders repeatedly emphasized in the news reports the incident was not racially motivated. Moreover, extensive voir dire was conducted in this case with most jurors responding the pretrial publicity would not adversely affect their ability to be fair and impartial. *See [State v.] Wagner*, 410 N.W.2d [207,] 211 [(Iowa 1987)] (voir dire can be trusted to expose prejudices based on pretrial publicity).

Escobedo argues this case illustrates the impropriety of relying upon voir dire examination to expose prejudice in publicized cases because jurors can be dishonest in their responses to the questions, and prejudice should be presumed when a biased juror actually becomes part of the jury. We disagree. The incident involving the dismissed juror does not give rise to a presumption of prejudice on the part of the jury. The presumption of prejudice pertains to pervasive pretrial publicity. Claims that the jury that did serve was not impartial must be grounded on evidence appearing of record. *State v. Neuendorf*, 509 N.W.2d 743, 747 (Iowa 1993). There was no evidence the dismissed juror in this case had any effect on the verdict or that the jury was [not] impartial. We do not find the district court abused its discretion in denying the motion for change of venue.

*Escobedo*, 573 N.W.2d at 276.

On direct appeal, Escobedo also asserted that the trial court should not have replaced a juror during deliberations and, instead, should have granted him an "automatic" mistrial. The Iowa Court of Appeals agreed:

Our rules of criminal procedure permit the selection of alternate jurors to sit at trial and replace any regular juror who becomes unable to serve, or becomes disqualified, *before the jury retires to deliberate on the verdict*. Iowa R.Crim. P. 17(15). There are a variety of circumstances that can arise during the course of a trial which require jurors to discontinue their service, and the availability of alternate jurors to replace dismissed jurors helps to avoid the time, expense, anxiety, and inconvenience associated with a mistrial. *Although some jurisdictions recognize the replacement of regular jurors during deliberations, we do not*. Our rules only permit the replacement of a regular juror prior to the commencement of the deliberations and require alternate jurors to be discharged after the deliberations begin. *Id.*

*We agree with Escobedo the district court was not authorized to replace a juror during deliberations. We also*

9

> *agree Escobedo would have been entitled to a mistrial after*
> *the trial court dismissed the juror during the deliberations.*

*Escobedo*, 573 N.W.2d at 276 (footnotes omitted; emphasis added) (also noting, in a footnote, that "[t]he Federal Rules of Criminal Procedure . . . do not permit the replacement of a juror during deliberations," either, citing FED. R. CRIM. P. 24(c)). The court also explained, in a footnote,

> In Iowa, a jury of twelve is required in all cases involving serious criminal charges, and unanimity is required to reach a verdict. *See* Iowa R.Crim. P. 17, 21. Consequently, the failure to meet these requirements would support a mistrial. *See State v. White*, 209 N.W.2d 15, 17 (Iowa 1973). A defendant, of course, may waive the requirements and be tried by a jury of less than twelve. *State v. Browman*, 191 Iowa 608, 182 N.W. 823, 833-34 (1921); *see State v. Henderson*, 287 N.W.2d 583, 585 (Iowa 1980).

*Escobedo*, 573 N.W.2d at 276 n.2. Notwithstanding that the trial court erred in replacing a juror during deliberations and that Escobedo would have been entitled to a mistrial after the trial court dismissed the juror, the Iowa Court of Appeals granted Escobedo no relief from his conviction, because he "did not request the trial court to declare a mistrial, but instead acquiesced in the replacement of the dismissed juror with a previously dismissed alternative juror," and because the Iowa Supreme Court does not recognize "the plain error standard of review." *Id*. at 276-77.

The Iowa Supreme Court denied further review of Escobedo's direct appeal.

### b. Post-conviction relief proceedings

### i. The district court's decision

In 1998, Escobedo and Herrarte filed applications for post-conviction relief, in the Iowa District Court for Sioux County, alleging ineffective assistance of trial and appellate counsel and newly discovered material evidence that would have changed the outcome of the trial. Respondent's Appendix of Relevant State Court Decisions (docket

no. 41-1), Ruling Re: Application For Post Conviction Relief (Post-Conviction Relief Ruling), 2. However, in 2002, the post-conviction relief court granted the state's motion for summary judgment and dismissed all but one claim. The post-conviction relief court described that remaining claim, as follows:

> Applicants claim that trial counsel were ineffective when they agreed to replace a juror with an alternate juror after deliberations had begun, rather than requesting a mistrial. Applicants claim appellate counsel were ineffective because they did not raise this issue on appeal. It is this issue regarding appellate counsel's effectiveness that is the sole remaining claim of Applicants' Applications for Post Conviction Relief.

Post-Conviction Relief Ruling at 2. However, the Iowa District Court reasoned that "[a]ppellate counsel could not have successfully raised this issue unless trial counsel were, in fact, ineffective," so that, "to reach the issue of appellate counsel's effectiveness, we must first examine trial counsel's conduct." *Id.*

Magistrate Judge Leonard T. Strand summarized the pertinent evidence in the state post-conviction relief proceedings in his Report And Recommendation (docket no. 44), 5-6, and I agree with his summary. Escobedo testified that he knew about the juror substitution because his lawyer discussed it with him and he was present while the attorneys and the trial judge discussed it. Post-Conviction Relief Trial Transcript 7-8 (State Court Documents 4(d), App. 414-15). He stated that his lawyer did not ask him whether he would agree with replacing a juror or if he instead wanted to request a mistrial. *Id.* at 9-10 (State Court Documents 4(d), App. 416-17). Escobedo testified that he did not ask his attorney any questions about the situation. *Id.* at 15 (State Court Documents 4(d), App. 422). Escobedo's trial counsel testified that he evaluated the situation and did not believe a mistrial was the best option. *Id.* at 58 (State Court Documents 4(d), App. 464). More specifically, he stated:

> I felt we had gotten as much as we could get from the
> State's witnesses during the course of trial to establish our
> defense. And then with how the events went during final
> argument, I didn't think those matters would recreate
> themselves if there was a second trial.

*Id*. at 58-59 (State Court Documents 4(d), App. 464-65). Escobedo's trial counsel
stated that he thought that substituting the juror so that the deliberations could go
forward was the best option:

> The reason for that was you have eliminated the potential
> bias from [the dismissed juror] from the jury, as best you
> were able, and gave the jury a chance to go back and start
> over with deliberations, as I believe [the trial judge] directed
> them to do, and you still had the impact of what happened
> during the State's final arguments waging [sic: weighing?]
> in the defendant's favor, in my estimation.

*Id*. at 60-61 (State Court Documents 4(d), App. 466-67).[7] Escobedo's trial counsel
further testified that he discussed the issue and the options—including a mistrial—with
Escobedo, but ultimately believed that the decision as to whether to seek a mistrial was
a tactical decision to be made by him and Herrarte's counsel. *Id*. at 64, 67 (State Court
Documents 4(d), App. 470, 473).

The Iowa District Court rejected Escobedo's application for post-conviction
relief in its Post-Conviction Relief Ruling, filed on October 20, 2003. The Iowa
District Court found that Escobedo's counsel was highly experienced and that, even if
his strategy or tactics backfired, that did not mean that he was incompetent. Post-
Conviction Relief Ruling at 3-4. It also found that, after Escobedo's and Herrarte's

---

[7] Contrary to this statement of trial counsel's reasons, the record shows that trial
counsel actually missed the opportunity to "eliminate[ ] the potential bias from [the
dismissed juror] from the jury," because trial counsel did not follow up with any
investigation of the extent to which the biased juror might have tainted the remaining
jurors.

attorneys considered and discussed with each other their options of continuing with deliberations with an alternate juror or asking for a mistrial, they both believed that continuing with deliberations would benefit their clients. *Id*. at 4. The Iowa District Court also found that, while Escobedo did not remember his trial counsel discussing the issue with him, his trial counsel's testimony that he did discuss the issue with Escobedo was more credible. *Id*. at 4-5. Therefore, the Iowa District Court found "that the decision not to request a mistrial was a matter of trial strategy and [Escobedo] [was] not required to waive that right on the record." *Id*. at 4.

The Iowa District Court also concluded that Escobedo could not show prejudice:

> Here, [Escobedo and Herrarte] would have a difficult time proving the requisite prejudice. The evidence presented against them was strong. Trial counsel believed that they obtained as much helpful information as they could from the State's witnesses. Further, it was unlikely that [the prosecutor] would make the same mistakes upon retrial. [The trial judge's] anger at [the prosecutor] and his actions towards the [prosecutor] and admonitions to the jury likely would not have been reproduced in a subsequent trial. Moreover, [Escobedo and Herrarte] still received what they expected from the proceedings: a verdict from 12 jurors of their choosing.

Post-Conviction Relief Ruling at 5. Consequently, the Iowa District Court concluded that Escobedo and Herrarte could not "meet the burden of proof to show that they were prejudiced by trial counsel's decision to substitute the juror." *Id.*

## ii. *The appellate court's decision*

On November 17, 2003, Escobedo filed a notice of appeal of the denial of post-conviction relief. On December 8, 2004, the Iowa Court of Appeals issued its opinion on that appeal. That opinion, in the part pertinent here, was as follows:

> On appeal, Escobedo and Herrarte maintain the postconviction court erred when it determined trial counsel

made a strategic decision to forego requesting a mistrial. They further contend that because a mistrial would have been granted had one been requested and because there is a reasonable likelihood they would have been convicted of a lesser offense on retrial, they have established the requisite prejudice element.

The test to be applied in judging counsel's actions is whether counsel's performance was within the range of normal competency. *Snethen v. State*, 308 N.W.2d 11, 14 (Iowa 1981). A presumption exists that counsel is competent. *Sims v. State*, 295 N.W.2d 420, 423 (Iowa 1980). "Improvident trial strategy, miscalculated tactics, mistake, carelessness or inexperience do not necessarily amount to ineffective counsel." *Parsons v. Brewer*, 202 N.W.2d 49, 54 (Iowa 1972).

At the postconviction hearing, Herrarte's counsel . . . testified that after the allegations regarding the juror came to light he was aware he had the option to either request a mistrial or continue with deliberations. He testified that, for various reasons, his view was that rather than seeking a mistrial, the jury should be allowed to continue deliberating: first, the trial court judge had strongly admonished the jury to disregard inappropriate statements by the prosecutor on another matter; second, due to certain actions by the prosecutor, [Herrarte's trial counsel] felt the State's credibility had been severely damaged; third, he felt generally the jury was favorably inclined to believe Herrarte and Escobedo had acted in self-defense. He characterized his choice to forego a mistrial motion as "strategic," and he noted that he had discussed the decision with both his client and co-counsel.

[Escobedo's trial counsel concurred with Herrarte's trial counsel's] assessment that the trial had gone well for their clients and he agreed with [Herrarte's trial counsel's] position that they had discussed, in the presence of their clients, the options of mistrial or having the jury continue with deliberations. He testified that he was disinclined to

seek a mistrial because he "felt [they] had gotten as much as [they] could get from the State's witnesses during the course of the trial to establish our defense." He further noted that he "didn't think these matters would recreate themselves if there was a second trial."

Upon our de novo review, we concur in the postconviction court's conclusion that trial counsel's choices were reasonable strategic and tactical decisions. The fact that the decision may have, with hindsight, not achieved their desired result is irrelevant. Because the decision to not seek a mistrial was based on the professional judgment of two experienced criminal trial attorneys, Escobedo and Herrarte cannot establish that their counsel breached an essential duty.

Regardless, we further conclude neither Escobedo nor Herrarte can establish prejudice. The evidence against them was strong, including the testimony of various eye witnesses. There is no reasonable likelihood the result of a second trial would have been any different. We reject the contention that Escobedo and Herrarte need only show there was a reasonable probability the mistrial would have been granted, and not that there was a reasonable probability the ultimate verdict would have been different. In *Ledezma*, our supreme court reasoned that under *Strickland*, "different result" requires a reasonable probability that a different verdict would have been reached or that the factfinder would have possessed a reasonable doubt. *Ledezma [v. State]*, 626 N.W.2d [134,] 134 [(Iowa 2001)].

*Escobedo*, 695 N.W.2d 333, 2004 WL 2804848 at *2 (footnote omitted). In a footnote, the Iowa Court of Appeals observed, "While Escobedo and Herrarte assert that there was no opportunity for counsel to consult with them before they 'acquiesced' to the seating of the alternate juror, the record does not indicate whether there was a pause in the proceedings or what may have previously transpired off the record." *Id*. at n.1.

On March 17, 2005, the Iowa Supreme Court denied further review of the decision of the Iowa Court of Appeals on Escobedo's appeal of the denial of his application for post-conviction relief.

## 2. *Federal Proceedings*

### a. *Escobedo's § 2254 Petitions*

On April 26, 2005, Escobedo filed a *pro se* petition for *habeas corpus* relief in federal court under 28 U.S.C. § 2254. When counsel was appointed to represent Escobedo, counsel discovered that Escobedo's petition contained unexhausted claims. Therefore, on October 26, 2005, Judge Linda R. Reade, now Chief Judge Reade, dismissed the action without prejudice. *See Escobedo v. Burger*, No. 05-4039-LRR (N.D. Iowa) (docket no. 15). Escobedo's second state post-conviction relief application, which attempted to exhaust his unexhausted claims, was denied by the Iowa District Court and on appeal to the Iowa Court of Appeals. The Iowa Supreme Court denied further review.

On January 10, 2010, with the assistance of counsel, Escobedo initiated the present action for federal *habeas corpus* relief by filing Escobedo's Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (docket no. 1). On February 1, 2011, with the assistance of counsel, Escobedo filed his Amended Habeas Petition (Amended § 2254 Petition) (docket no. 14), asserting four grounds for federal *habeas* relief. The respondent filed an Answer (docket no. 17) on March 1, 2011, asserting that three of Escobedo's grounds for relief were not exhausted, or were not cognizable as federal claims, or both.

On January 31, 2012, Escobedo filed his Merits Brief (docket no. 35), in which he conceded that his second, third, and fourth grounds for relief were not properly preserved in state court, but contended that his first ground for relief was properly before the federal court. That ground for relief was a claim of ineffective assistance of

trial counsel based on "fail[ure] to seek a mistrial after the [trial] court improperly substituted a juror," Merits Brief at 2, and Escobedo briefed that ground on the merits. On February 2, 2012, without resistance from the respondent and with leave of court, Escobedo filed his Amended And Substituted Merits Brief (docket no. 38), in which he asserted that he did not materially change the brief or add any new issues, but did more fully utilize some portions of the trial transcript. The respondent filed his Merits Brief (docket no. 41) on March 27, 2012. Escobedo did not file a reply brief, and Magistrate Judge Strand, to whom the matter was referred, did not hold a hearing or hear oral arguments on Escobedo's Amended § 2254 Petition.

### b.    *The Report And Recommendation*

On September 6, 2012, Magistrate Judge Strand filed his Report And Recommendation On Petition For Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (docket no. 44). After surveying the record, the applicable standards for relief pursuant to § 2254, and the standards applicable to a constitutional claim of ineffective assistance of counsel, Judge Strand analyzed the determinations of the Iowa Court of Appeals on the two prongs of Escobedo's constitutional claim.

As to the "deficient performance" prong of Escobedo's ineffective assistance claim, Judge Strand concluded, as follows:

> The Iowa Court of Appeals did not unreasonably apply *Strickland* in concluding that Escobedo's attorney made a reasonable strategic decision to proceed with an alternate juror and forego a mistrial motion. The court's findings concerning [Escobedo's and Herrarte's trial counsels'] testimony refute Escobedo's arguments that his attorney did not know a mistrial was an option or that it was inconsistent for his attorney to forego a mistrial motion when he had moved for one the day before. Even if the attorneys did not know they were entitled to an automatic mistrial, as Escobedo argues, the testimony clearly establishes that they evaluated a mistrial as an option and

17

made a strategic decision not to pursue it. A determination of factual issues made by a State court shall be presumed to be correct by the federal courts and is binding in a section 2254 action if fairly supported by the record, unless rebutted by clear and convincing evidence of error. 28 U.S.C. § 2254(e)(1); *Summer v. Mata*, 449 U.S. 539, 101 S. Ct. 764, 66 L. Ed. 2d 722 (1981). Escobedo has not rebutted the presumption.

The Iowa Court of Appeals also reasonably applied *Strickland* in recognizing that counsel is given "wide latitude" in making tactical decisions which are "virtually unchallengeable". *Strickland*, 466 U.S. at 689-90. Elaborating on this deferential standard, the *Strickland* court stated:

> [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

*Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164, 100 L. Ed. 83 (1955)). In applying *Strickland*, the Iowa Court of Appeals reasonably concluded that the choice to continue deliberations with a substituted juror rather than request a mistrial was within the wide range of reasonable professional assistance.

Report And Recommendation at 13-14.

Turning to the "prejudice" prong of Escobedo's constitutional claim, Judge Strand first rejected Escobedo's argument that the Iowa Court of Appeals unreasonably failed to extend Supreme Court precedent by considering whether the "result of the proceeding" would have been different in terms of whether or not a mistrial would have occurred, based on an analogy to Supreme Court cases involving failure to file a timely appeal or bad advice concerning whether to plead guilty or go to trial, rather than

simply considering whether he nevertheless would have been convicted. *Id*. at 15-16. Judge Strand explained,

> An attorney's failure to request a mistrial is different than an attorney's failure to file an appeal without the defendant's consent or the failure to advise the defendant about pleading guilty. The decision to appeal or plead guilty belongs to the defendant. *See Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) (identifying the fundamental decisions that are under the ultimate authority of the defendant as the decision "to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."). The decision whether to move for a mistrial is generally considered a strategic decision that is left to counsel. *United States v. Washington*, 198 F.3d 721, 723 (8th Cir. 1999); *see also United States v. Chapman*, 593 F.3d 365, 367-69 (4th Cir. 2010) (holding that counsel was not ineffective for ignoring client's direction to accept the district court's offer of a mistrial). It was not unreasonable for the Iowa Court of Appeals to refuse to extend the prejudice standards from *Hill* and *Flores-Ortega* to the context of failing to move for a mistrial.

Report And Recommendation at 16. Judge Strand also rejected Escobedo's reliance on *United States v. Ramsey*, 323 F. Supp. 2d 27 (D.D.C. 2004), in which the court held that the certainty that a mistrial would have been granted, if requested, was sufficient to demonstrate prejudice, because that district court decision was not "clearly established" Supreme Court law. *Id*. at 16-17.

Further, Judge Strand concluded,

> The court finds the Iowa Court of Appeals was reasonable in holding that prejudice required a showing of a reasonable probability that a different verdict would have been reached in a second trial, but for counsel's alleged error. As the State pointed out, there is no "clearly established" Supreme Court precedent on the standard of prejudice from counsel's failure to move for a mistrial that

was warranted under state procedural rules. While *Ramsey* is persuasive, it can be distinguished in many ways—most important of which is the standard of review. The District Court in that case reviewed Ramsey's section 2255 petition directly under *Strickland*. The standard of review before this court is whether the Iowa Court of Appeals decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). This additional level of deference means that the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" for this court to find that it was unreasonable. *Harrington*, 131 S. Ct. at 786-87. Because there is no clearly established federal law for the prejudice standard regarding an attorney's failure to request a mistrial under these circumstances, the Iowa Court of Appeals did not unreasonably apply *Strickland* or unreasonably fail to extend federal law in requiring Escobedo to demonstrate a reasonable probability that a different verdict would have been reached in a second trial.

The Iowa Court of Appeals also reasonably concluded that Escobedo was not prejudiced under this standard as a result of the alleged error by his counsel. The court reasoned that the evidence against Escobedo was strong and included testimony from various eyewitnesses. It reasonably decided that even if Escobedo had established deficient performance by his counsel in failing to move for a mistrial, he was not prejudiced as a result of that deficiency.

Report And Recommendation 17-18.

For these reasons, Judge Strand recommended that Escobedo's Amended § 2254 Petition be denied.

### c. *Objections to the recommended disposition*

After extensions of time to do so, Escobedo filed his Objections To Report And Recommendation (docket no. 53) on October 22, 2012. Escobedo asserts the following

four objections to the Report And Recommendation: (1) he "objects to Judge Strand's finding that the [Iowa] Court of Appeals reasonably concluded that [his] [trial] attorney made a strategic and tactical decision to forego a mistrial after consulting with his client"; (2) he contends that "Judge Strand erred in finding that the 'strategic decision' not to object to [failure to grant] an automatic mistrial was a 'finding of fact' subject to deference under 28 U.S.C. § 2254(e)(1)"; (3) he contends that, "assuming defense counsel was aware that he had an automatic mistrial in hand, Judge Strand erred in finding that the Iowa Court of Appeals' assessment of deficient performance was reasonable under *Strickland*"; and (4) he contends that "Judge Strand erred in finding reasonable the Iowa Court of Appeals' *Strickland* prejudice analysis."

The respondent filed no objections to the Report And Recommendation.

## II. LEGAL ANALYSIS

### A. Review Of A Report And Recommendation

#### 1. The applicable standards

The applicable statute provides for *de novo* review by the district judge of a magistrate judge's report and recommendation, when objections are made, as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. Ia. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's

report and recommendation).  The United States Supreme Court has explained that the statutory standard does not preclude review by the district court in other circumstances, however:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask.  Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).  Thus, the specific standard of review may depend upon whether or not a party has objected to portions of the report and recommendation.  I will explain what triggers each specific standard of review in a little more detail.

### 2.    **De novo** *review*

If a party files an objection to a magistrate judge's report and recommendation, the district court must "make a de novo determination *of those portions of the report or specified proposed findings or recommendations to which objection is made*."  28 U.S.C. § 636(b)(1) (emphasis added).  In most cases, to trigger *de novo* review, "objections must be timely and specific."  *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990).  However, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general *pro se* objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and has also been willing to conclude that general objections require "full de novo review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a de novo review would still have been appropriate given such a concise record.").

When objections have been made, and the magistrate judge's report is based upon an evidentiary hearing, "'the district court must, at a minimum, listen to a tape

recording or read a transcript of the evidentiary hearing.'" *United States v. Azure*, 539 F.3d 904, 910 (8th Cir. 2008) (quoting *Jones v. Pillow*, 47 F.3d 251, 252 (8th Cir. 1995), in turn quoting *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989)). Judge Strand did not hold an evidentiary hearing on Boss's § 2254 Petition or hear oral arguments on the merits of Boss's claims. Instead, he considered only the parties' written submissions, and I have done the same.

A district court may also review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Thomas*, 474 U.S. at 154. This discretion to conduct *de novo* review of any issue at any time makes sense, because the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994).

### 3. "Clear error" review

In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150; *see also Peretz v. United States*, 501 U.S. 923, 939 (1991) (stating that § 636(b)(1) "provide[s] for de novo review *only* when a party objected to the magistrate's findings or recommendations" (emphasis added)); *United States v. Ewing*, 632 F.3d 412, 415 (8th Cir. 2011) ("By failing to file objections, Ewing waived his right to de novo review [of a magistrate judge's report and recommendation on a suppression motion] by the district court."). Indeed, *Thomas* suggests that no review at all is required. *Id*. ("We are therefore not persuaded that [§ 636(b)(1)] requires some lesser review by the district court when no objections are filed.").

Nevertheless, the Eighth Circuit Court of Appeals has indicated that a district court should review the portions of a magistrate judge's report and recommendation to which no objections have been made under a "clearly erroneous" standard of review.

23

*See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that, when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting that the advisory committee's note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"). Review for clear error, even when no objection has been made, is also consistent with "retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk*, 15 F.3d at 815.

Although the Eighth Circuit Court of Appeals has not explained precisely what "clear error" review means in this context, in other contexts, the Supreme Court has stated that the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

I will review Judge Strand's Report And Recommendation with these standards in mind.

### B.     *Federal* Habeas *Relief*

Before reviewing the Report And Recommendation, I will first consider the standards for federal *habeas* relief from a state conviction. I noted, above, that the United States Supreme Court has recognized that "[t]here is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful

confinement and that he is deprived of his freedom contrary to law." *Harris v. Nelson*, 394 U.S. 286, 292 (1969). Indeed, "[h]abeas corpus is one of the precious heritages of Anglo-American civilization." *Fay v. Noia*, 372 U.S. 391, 441 (1963), *overruled on other grounds, Wainwright v. Sykes*, 433 U.S. 72 (1977); *see also McClesky v. Zant*, 499 U.S. 467, 496 (1991) ("The writ of habeas corpus is one of the centerpieces of our liberties.").[8] Nevertheless, it was not until 1867 that Congress extended federal *habeas corpus* to prisoners held in state custody. *See McClesky*, 499 U.S. at 478.[9] "[T]he leading purpose of federal habeas review [in the case of a state prisoner] is to 'ensur[e] that state courts conduct criminal proceedings in accordance with the [United States] Constitution as interpreted at the time of th[ose] proceedings.'" *Graham v. Collins*, 506 U.S. 561, 467 (1993) (quoting *Saffle v. Parks*, 494 U.S. 484, 488 (1990)).

Notwithstanding its importance, as I also noted, above, the United States Supreme Court has explained that "the writ of habeas corpus has historically been regarded as an extraordinary remedy." *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993). Thus, various justices of the Supreme Court have cautioned that "upsetting the

---

[8] The Supreme Court has recognized that the power to issue a writ of *habeas corpus* is not necessarily an unalloyed good:

> "But the writ has potentialities for evil as well as for good. Abuse of the writ may undermine the orderly administration of justice and therefore weaken the forces of authority that are essential for civilization." *Brown v. Allen*, [ ] 344 U.S. [443,] 512, 73 S.Ct., at 449 [(1953)] (opinion of Frankfurter, J.).

*McClesky*, 499 U.S. at 498.

[9] Some of the history of federal *habeas* relief, before and after it was extended to state prisoners, is set out in *Johnson v. United States*, 860 F. Supp. 2d 663, 737 n.23 (N.D. Iowa 2012).

finality of judgment should be countenanced only in rare instances." *O'Neal v. McAninch*, 513 U.S. 432, 447 (1995) (Thomas, J., joined by Rehnquist, C.J., and Scalia, J., dissenting). Furthermore, "Congress enacted the AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and to further the principles of comity, finality, and federalism." *See Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal quotation marks and citations omitted). Therefore, "[t]o obtain habeas corpus relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Metrish v. Lancaster*, ___ U.S. ___, ___, ___ S. Ct. ___, ___, 2013 WL 2149793, *5 (May 20, 2013) (quoting *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 787 (2011)).

In light of these concerns, as explained more fully, below, since the passage of AEDPA, *habeas* review by the federal courts of a state court conviction and the state courts' denial of post-conviction relief is limited and, at least ordinarily, deferential.

### 1. *"Exhausted" and "adjudicated" claims*

#### a. *The "exhaustion" and "adjudication" requirements*

The ability of the federal courts to grant *habeas* relief to a state prisoner depends, in the first instance, on whether or not the claim before the federal court has been "exhausted" in the state courts—a requirement found in § 2254(b) long before the AEDPA was enacted. As the Supreme Court explained four decades ago, "The rule of exhaustion in federal habeas corpus actions is rooted in considerations of federal-state comity." *Preiser v. Rodriguez*, 411 U.S. 475, 491 (1973).

More specifically, the AEDPA provides that federal *habeas* relief cannot be granted to a person in state custody, unless it appears that "the applicant has exhausted the remedies available in the courts of the State," or "there is an absence of available

State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). "[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus [in the state court] must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland*, 516 U.S. 152, 162-63 (1996) (citing this rule as the holding of *Picard v. Connor*, 404 U.S. 270 (1971)). A federal court has the authority to *deny relief on the merits* on an unexhausted claim, *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."), but it cannot *grant relief* on such a claim. *Id*. at § 2254(b)(1). At least theoretically, "once a state prisoner arrives in federal court with his petition for habeas corpus [asserting properly exhausted claims], the federal habeas statute provides for a swift, flexible, and summary determination of his claim." *Preiser*, 411 U.S. at 495 (citing 28 U.S.C. § 2243, which provides for preliminary review of a state prisoner's petition to determine whether it appears from the application that the petitioner is not entitled to relief).

As to the "adjudicated on the merits" requirement, the Supreme Court has held "that, when a state court issues an order that summarily rejects without discussion *all* the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." *Johnson*, ___ U.S. at ___, 1333 S. Ct. at 1091 (emphasis in the original) (citing *Harrington v. Richter*, 562 U.S. ----, 131 S. Ct. 770 (2011)). Similarly, "when a defendant convicted in state court attempts to raise a federal claim, either on direct appeal or in a collateral state proceeding, and a state court rules against the defendant and issues an opinion that addresses some issues but does not expressly address the

federal claim in question," the Supreme Court has held "that the federal claim at issue . . . must be presumed to have been adjudicated on the merits by the [state] courts," and that, if the presumption is not adequately rebutted, "the restrictive standard of review set out in § 2254(d)(2) consequently applies." *Id*. at 1091-92.

There is no dispute that Escobedo has "exhausted" his claim that his trial counsel provided ineffective assistance in failing to demand a mistrial rather than allowing replacement of a juror dismissed after deliberations had begun. Similarly, there is no dispute that this claim of ineffective assistance of counsel was "adjudicated on the merits."

### b. Limitations on relief on "exhausted" claims

If a claim is "exhausted," then the ability of a federal court to grant *habeas* relief depends on the nature of the alleged error by the state courts. As the Supreme Court explained, "One of the methods Congress used to advance the[ ] objectives [of AEDPA] was the adoption of an amended 28 U.S.C. § 2254(d)," which "places 'new constraint[s] on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.'" *Woodford*, 538 U.S. at 206 (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "[Supreme Court] cases make clear that AEDPA in general and § 2254(d) in particular focus in large measure on revising the standards used for evaluating the merits of a habeas application." *Id*.

Specifically, as the Supreme Court more recently explained, the power of the federal court to grant relief to a person in state custody on a properly exhausted claim is limited, as follows:

> The Antiterrorism and Effective Death Penalty Act of
> 1996 (AEDPA) restricts the circumstances under which a
> federal habeas court may grant relief to a state prisoner
> whose claim has already been "adjudicated on the merits in

State court." 28 U.S.C. § 2254(d). Specifically, if a claim
has been "adjudicated on the merits in State court," a
federal habeas court may not grant relief unless "the
adjudication of the claim—

> "(1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States; or
>
> "(2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding."
> *Ibid.*

Because the requirements of § 2254(d) are difficult to meet,
it is important whether a federal claim was "adjudicated on
the merits in State court."

*Johnson v. Williams*, ___ U.S. ___, ___, 133 S. Ct. 1088, 1091 (2013). This is a
"difficult to meet . . . and highly deferential standard." *Cullen v. Pinholster*, 563 U.S.
___, ___, 131 S.Ct. 1388, 1398 (2011) (internal quotation marks omitted). This highly
deferential standard is appropriate, "because the purpose of AEDPA is to ensure that
federal habeas relief functions as a guard against extreme malfunctions in the state
criminal justice systems, and not as a means of error correction." *Greene v. Fisher*,
___ U.S. ___, ___, 132 S. Ct. 38, 43 (2011) (internal quotation marks and citations
omitted).

I will explore, next, the specific circumstances identified in § 2254(d) in which a
federal court has the authority to grant *habeas* relief to a state prisoner on a claim that
was "adjudicated on the merits."

## 2. The § 2254(d)(1) standards

"[R]eview under § 2254(d)(1) is limited to the record that was before the state
court that adjudicated the claim on the merits." *Cullen*, ___ U.S. at ___, 131 S. Ct. at

1398. As a consequence of the limitations on relief under § 2254(d)(1), "[t]he starting point for cases subject to § 2254(d)(1) is to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims." *Marshall v. Rodgers*, ___ U.S. ___, ___, 133 S. Ct. 1446, 1449 (2013); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). "Clearly established law" means "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" *Howes v. Fields*, ___ U.S. ___, ___, 132 S. Ct. 1181, 1187 (2012) (quoting *Williams*, 529 U.S. at 412)). Similarly, circuit precedent cannot be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme Court] has not announced." *Marshall*, ___ U.S. at ___, 133 S. Ct. at 1450 (citing *Parker v. Matthews*, 567 U.S. ___, ___, 132 S. Ct. 2148, 2155 (2012) (*per curiam*)).[10]

The next step for the federal *habeas* court under § 2254(d)(1) is to "'determine what arguments or theories supported . . . the state court's decision; and then [the federal court] must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court].'" *Wetzel v. Lambert*, ___ U.S. ___, ___, 132 S. Ct. 1195, 1198 (2012) (quoting *Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011)).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Therefore, I

---

[10] In *Marshall*, the Supreme Court also explained, "Although an appellate panel may, in accordance with its usual law-of-the-circuit procedures, look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent, it may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to this Court, be accepted as correct." ___ U.S. at ___, 133 S. Ct. at 1450 (internal citations omitted).

will briefly summarize the "independent meaning" of each of these clauses authorizing federal *habeas* relief.

### a. The "contrary to" clause

A state court decision is "contrary to" clearly established federal law, within the meaning of § 2254(d)(1), "if the state court 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases.'" *Lafler v. Cooper*, ___ U.S. ___, ___, 132 S. Ct. 1376, 1390 (2012) (quoting *Williams*, 529 U.S. at 405)). "A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 406. A federal court's belief that it might have reached a different result is not enough to show that the state court decision was "contrary to" established federal law, where the state court applied the correct standard under established Supreme Court law. *Id.*

### b. The "unreasonable application" clause

A state court's decision involves an "unreasonable application" of federal law, within the meaning of § 2254(d)(1), if "'there was no reasonable basis for' the [state court's] decision." *Cullen*, ___ U.S. at ___, 131 S. Ct. at 1402 (quoting *Richter*, 562 U.S. at ___, 131 S. Ct. at 786). Thus, "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Richter*, 562 U.S. at ___, 131 S. Ct. at 785 (emphasis in the original) (quoting *Williams*, 529 U.S. at 410).

> [T]his Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." [*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)]. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to

> apply a specific legal rule that has not been squarely
> established by this Court." *Knowles v. Mirzayance*, 556
> U.S. ----, ----, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d
> 251 (2009) (internal quotation marks omitted).

*Richter*, 562 U.S. at ___, 131 S. Ct. at 786. "It bears repeating that even a strong case

for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

Nevertheless, where the rule itself is clearly established, the Supreme Court has

recognized two ways in which it can be unreasonably applied:

> First, a state-court decision involves an unreasonable
> application of this Court's precedent if the state court
> identifies the correct governing legal rule from this Court's
> cases but unreasonably applies it to the facts of the particular
> state prisoner's case. Second, a state-court decision also
> involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends a
> legal principle from our precedent to a new context where it
> should not apply or unreasonably refuses to extend that
> principle to a new context where it should apply.

*Williams*, 529 U.S. at 407 (O'Connor, J., writing for the majority). The Supreme

Court recognized that there were "some problems of precision" with "unreasonable

application" as to extension or failure to extend a clearly established rule to a new

context:

> *Just as it is sometimes difficult to distinguish a mixed*
> *question of law and fact from a question of fact, it will often*
> *be difficult to identify separately those state-court decisions*
> *that involve an unreasonable application of a legal principle*
> *(or an unreasonable failure to apply a legal principle) to a*
> *new context.* Indeed, on the one hand, in some cases it will
> be hard to distinguish a decision involving an unreasonable
> extension of a legal principle from a decision involving an
> unreasonable application of law to facts. On the other hand,
> in many of the same cases it will also be difficult to
> distinguish a decision involving an unreasonable extension of
> a legal principle from a decision that "arrives at a conclusion

opposite to that reached by this Court on a question of law,"
*supra*, at 1519. Today's case does not require us to decide
how such "extension of legal principle" cases should be
treated under § 2254(d)(1). *For now it is sufficient to hold
that when a state-court decision unreasonably applies the
law of this Court to the facts of a prisoner's case, a federal
court applying § 2254(d)(1) may conclude that the state-
court decision falls within that provision's "unreasonable
application" clause.*

*Williams*, 529 U.S. at 408-09 (O'Connor, J., writing for the majority) (emphasis
added).

### c.     The effect of § 2254(d)(1) deficiencies in the state court decision

Even if a petitioner establishes that the state court's determination was "contrary
to" or an "unreasonable application of" federal law, within the meaning of
§ 2254(d)(1), that determination does not, standing alone, entitle the petitioner to relief.
Rather, it only entitles the petitioner to *de novo* consideration by the federal court of his
or her *underlying constitutional claim* for post-conviction or *habeas* relief.    *See
Johnson*, ___ U.S. at ___, 133 S. Ct. at 1097 ("Even while leaving 'primary
responsibility' for adjudicating federal claims to the States, AEDPA permits de novo
review in those rare cases when a state court decides a federal claim in a way that is
'contrary to' clearly established Supreme Court precedent." (internal citations
omitted)); *Lafler*, ___ U.S. at ___, 132 S. Ct. at 1390-91 (holding that, where the state
court's decision was "contrary to" clearly established federal law, because it failed to
apply the *Strickland* standards to an ineffective assistance of counsel claim, the federal
court "can determine the principles necessary to grant relief" and apply them to the
facts of the case); *Richter*, ___ U.S. at ___, 131 S. Ct. at 770 (stating that
§ 2254(d)(1)'s exception "permit[s] relitigation where the earlier state decision resulted
from an 'unreasonable application of' clearly established federal law"); *Panetti v.*

*Quarterman*, 551 U.S. 930, 953 (2007) (stating that, when the state court's adjudication was "contrary to" Federal law, within the meaning of § 2254(d)(1), "[a] federal court must then resolve the claim without the deference AEDPA otherwise requires"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (performing the analysis required under *Strickland*'s "prejudice" prong without deferring to the state court's decision, because the state court's resolution of *Strickland*'s "deficient performance" prong involved an "unreasonable application" of federal law, and the state court had considered the "deficient performance" prong dispositive).

### 3. The § 2254(d)(2) standard

Just as the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) have "independent meaning," *see Williams*, 529 U.S. at 405, the "unreasonable determination" clause of § 2254(d)(2) also involves separate considerations, related not to established federal law, but to sufficiency of the evidence. Section 2254(d)(2) provides for relief from a state court denial of post-conviction relief, if the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Again, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (applying this question to both the "unreasonable application" clause in § 2254(d)(1) and the "unreasonable determination" clause in § 2254(d)(2)). Thus, the federal court must "presume the [state] court's factual findings to be sound unless [the petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)). "The standard is demanding but not insatiable; as [the Court] said . . . , '[d]eference does not

by definition preclude relief.'" *Id.* (quoting its prior decision in the same case, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

### 4. De novo *review of issues not reached by the state court*

A federal court may also review *de novo* an element of a state prisoner's constitutional claim that the state court did not reach at all, because the state court found another element to be dispositive of the prisoner's claim. *See Porter v. McCuollum*, 558 U.S. 30, 38 (2009) (stating, "Because the state court did not decide whether Porter's counsel was deficient, we review *this element* of Porter's *Strickland* claim *de novo,*" and also finding that the state court's determination that there was no prejudice was an unreasonable application of *Strickland* (emphasis added)); *Cone v. Bell*, 556 U.S. 449, 472 (2009) (reviewing *de novo* the state prisoner's *Brady* claim, because the state courts did not reach the merits of that claim); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) ("Because the state courts found the representation adequate, they never reached the issue of prejudice, App. 265, 272–273, and so we examine *this element* of the *Strickland* claim *de novo.*" (emphasis added)); *Wiggins*, 539 U.S. at 534 ("In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence. In this case, our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis."). There is no allegation, here, that the state court failed to reach any issue that should now be reviewed *de novo*.

### C. *"Clearly Established Federal Law" For "Ineffective Assistance" Claims*

Escobedo's objections to Judge Strand's Report And Recommendation all relate to Judge Strand's analysis of the state court's disposition of his constitutional claim of ineffective assistance of counsel. Before considering these objections separately, I must

first "identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims." *Marshall*, ___ U.S. at ___, 133 S. Ct. at 1449 (explaining that this is the starting point for cases subject to § 2254(d)(1)); *Williams*, 529 U.S. at 412 (same); *Knowles*, 556 U.S. at 122 (same).

### 1.    *The* Strickland *standard*

The Supreme Court has explained that "[t]he right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, ___ U.S. ___, ___, 132 S. Ct. 1399, 1404 (2012) (citing *Strickland*, 466 U.S. at 686).    In the context of a claim of ineffective assistance of counsel, the Supreme Court has concluded that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams*, 529 U.S. at 391.    More specifically, "[t]o prevail on [an ineffective assistance of counsel] claim, [the petitioner] must meet both the deficient performance and prejudice prongs of *Strickland*, 466 U.S. at 686, 104 S. Ct. 2052." *Wong v. Belmontes*, 558 U.S. 15, 16 (2009) (*per curiam*).    The Supreme Court has explained that

> "'[s]urmounting *Strickland*'s high bar is never an easy task.'" *Richter, supra*, at ––––, 131 S.Ct., at 788 (quoting *Padilla v. Kentucky*, 559 U.S. ––––, ––––, 130 S.Ct. 1473, 1484, 176 L.Ed.2d 284, (2010)). The *Strickland* standard must be applied with "scrupulous care." *Richter*, *supra*, at – ––––, 131 S.Ct., at 788.

*Cullen*, ___ U.S. at ___, 131 S. Ct. at 1408.

Although the *Strickland* analysis is "clearly established federal law," and the petitioner must prove both prongs of that analysis to prevail, the Supreme Court does not necessarily require consideration of *both* prongs of the *Strickland* analysis in every case, nor does it require that the prongs of the *Strickland* analysis be considered in a specific order.    As the Court explained in *Strickland*,

Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, *there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.* In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U.S. at 697 (emphasis added).[11]

I will consider the two prongs of the *Strickland* analysis in a little more detail, before turning to analysis of Escobedo's ineffective assistance of counsel claim.

### 2.    *Strickland's "deficient performance" prong*

"The performance prong of *Strickland* requires a defendant to show '"that counsel's representation fell below an objective standard of reasonableness."'" *Lafler*,

---

[11] Although the Court in *Strickland* found that it was only necessary to consider the "prejudice" prong, so that it did not reach the "deficient performance" prong, the Eighth Circuit Court of Appeals has repeatedly held that it need not consider the "prejudice" prong, if it determines that there was no "deficient performance." *See, e.g., Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) ("'We need not inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies.'" (quoting *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002), in turn citing *Strickland*, 466 U.S. at 697)); *Ringo v. Roper*, 472 F.3d 1001, 1008 (8th Cir. 2007) ("Because we believe that the Missouri Supreme Court did not unreasonably apply *Strickland* when it determined that counsel's decision not to call Dr. Draper fell within the wide range of reasonable professional assistance, we need not consider whether counsel's decision prejudiced Mr. Ringo's case."); *Osborne v. Purkett*, 411 F.3d 911, 918 (8th Cir. 2005) ("Because Osborne did not satisfy the performance test, we need not consider the prejudice test.").

___ U.S. at ___, 132 S. Ct. at 1384 (quoting *Hill v. Lockart*, 474 U.S. 52, 57 (1985), in turn quoting *Strickland*, 466 U.S. at 688); *Richter*, ___ U.S. at ___, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 688). To put it another way, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Richter*, ___ U.S. at ___, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 687)).

In evaluating counsel's performance, the reviewing court must not overlook "'the constitutionally protected independence of counsel and . . . the wide latitude counsel must have in making tactical decisions.'" *Cullen*, ___ U.S. at ___, 131 S. Ct. at 1406 (quoting *Strickland*, 466 U.S. at 589). Thus,

> [b]eyond the general requirement of reasonableness, "specific guidelines are not appropriate." [*Strickland*, 466 U.S.], at 688, 104 S.Ct. 2052. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions ...." *Id.*, at 688–689, 104 S.Ct. 2052. *Strickland* itself rejected the notion that the same investigation will be required in every case. *Id.*, at 691, 104 S.Ct. 2052 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" (emphasis added)). It is "[r]are" that constitutionally competent representation will require "any one technique or approach." *Richter*, 562 U.S., at ––––, 131 S.Ct., at 779.

*Cullen*, ___ U.S. at ___, 131 S. Ct. at 1406-07.

The *Strickland* standard of granting latitude to counsel also requires that counsel's decisions must be reviewed in the context in which they were made, without "the distortions and imbalance that can inhere in a hindsight perspective." *Premo v. Moore*, ___ U.S. ___, ___, 131 S. Ct. 733, 741 (2011); *see also id.* at 745 (reiterating that "hindsight cannot suffice for relief when counsel's choices were reasonable and

legitimate based on predictions of how the trial would proceed" (citing *Richter*, ___ U.S. at ___, 131 S. Ct. 770)); *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) ("In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made, 466 U.S., at 689, 104 S.Ct. 2052, and by giving a 'heavy measure of deference to counsel's judgments,' *id.*, at 691, 104 S.Ct. 2052."). This is so, because "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge," and because "[i]t is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" *Richter*, ___ U.S. at ___, 131 S. Ct. at 788 (quoting *Strickland*, 466 U.S. at 689, and also citing *Bell v. Cone*, 535 U.S. 685, 702 (2002), and *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). In short, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (quoting *Strickland*, 466 U.S. at 690).

Furthermore,

> *Strickland* specifically commands that a court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." 466 U.S., at 689–690, 104 S.Ct. 2052. The [reviewing court] [i]s required not simply to "give [the] attorneys the benefit of the doubt," but to affirmatively entertain the range of possible "reasons [trial] counsel may have had for proceeding as they did."

*Cullen*, ___ U.S. at ___, 131 S. Ct. at 1407 (internal citations to the lower court opinion omitted); *Richter*, ___ U.S. at ___, 131 S. Ct. at 787 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's

representation was within the 'wide range" of reasonable professional assistance.'" (quoting *Strickland*, 466 U.S. at 689)).

### 3.    *Strickland's "prejudice" prong*

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, ___ U.S. at ___, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694). The Court has explained more specifically what a "reasonable probability" means:

> "A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*Strickland*, 466 U.S. at 694]. That requires a "substantial," not just "conceivable," likelihood of a different result. *Richter*, 562 U.S., at ----, 131 S.Ct., at 791.

*Cullen*, ___ U.S. at ___, 131 S. Ct. at 1403. Ultimately, a showing of "prejudice" requires counsel's errors to be "'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, ___ U.S. at ___, 131 S. Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 687).

### D.    *Escobedo's Objections To The "Deficient Performance" Analysis*

None of Escobedo's objections challenge *Strickland* as the relevant "clearly established federal law." *Marshall*, ___ U.S. at ___, 133 S. Ct. at 1449 (explaining that identification of the pertinent "clearly established federal law" is the starting point for cases subject to § 2254(d)(1)); *Williams v*, 529 U.S. at 412 (same); *Knowles*, 556 U.S. at 122 (same). Rather, Escobedo's first three objections challenge Judge Strand's failure to reject the conclusions of the Iowa Court of Appeals on the "deficient performance" prong of his ineffective assistance of counsel claim. Thus, they concern

the second and third steps in the § 2254(d) analysis, "'determin[ation of] what arguments or theories supported . . . the state court's decision; and then [determination of] whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court].'" *Wetzel*, ___ U.S. at ___, 132 S. Ct. at 1198 (quoting *Richter*, 562 U.S. at ___, 131 S.Ct. at 786).

### 1.    *The state court's rationale*

As noted above, the Iowa Court of Appeals found that Escobedo could not establish "deficient performance" of his trial counsel, for the following reasons:

> Upon our de novo review, we concur in the postconviction court's conclusion that trial counsel's choices were reasonable strategic and tactical decisions. The fact that the decision may have, with hindsight, not achieved their desired result is irrelevant. Because the decision to not seek a mistrial was based on the professional judgment of two experienced criminal trial attorneys, Escobedo and Herrarte cannot establish that their counsel breached an essential duty.

*Escobedo*, 695 N.W.2d 333, 2004 WL 2804848 at *2; *see, supra*, beginning at page 13 (quoting, in its entirety, the state court's analysis of the ineffective assistance claim at issue here). Escobedo contends that this rationale is factually flawed and inconsistent with the holdings of prior decisions of the United States Supreme Court in several ways.

### 2.    *Escobedo's first objection: unreasonable factual determinations*

Escobedo's first objection is "to Judge Strand's finding that the [Iowa] Court of Appeals reasonably concluded that [his] [trial] attorney made a strategic and tactical decision to forego a mistrial after consulting with his client." This objection sounds, in the first instance, like a challenge to a legal conclusion by the Iowa Court of Appeals,

but upon closer review of Escobedo's arguments, it is clear that the nature of this objection is to Judge Strand's review of certain factual findings by the Iowa Court of Appeals.

Specifically, Escobedo argues that the record does not "fairly support" the factual finding that his trial counsel knew of his right to seek an "automatic" mistrial, once a juror was removed during deliberations, or that, if his trial counsel did know, that Escobedo agreed to forfeit an "automatic" mistrial. He argues that the transcript itself rebuts any presumption about the correctness of these determinations, because, at the time of the juror substitution, it was absolutely clear that his trial counsel could have obtained an "automatic" mistrial, if he had but asked, but his trial counsel simply said "yes" when the trial judge announced his intention to replace the juror with an alternate. He contends that the record shows that his trial counsel did not consider the options actually available or consult with him about those options. He contends that trial counsel's failure to do so contrasts starkly with trial counsel's fervent attempts to obtain a mistrial the day before, based on improper, racially tinged comments by the prosecutor in closing arguments, which trial counsel had argued could not be remedied by a curative instruction. Indeed, Escobedo argues, both his trial counsel and his co-defendant's trial counsel admitted that they did not know that substituting a juror after deliberations had begun was improper, or that doing so was grounds for an "automatic" mistrial, and that they did not even look at the applicable rules to determine whether doing so was appropriate—conduct even the state described as a "mistake" in Escobedo's state post-conviction relief proceedings. Consequently, Escobedo contends, there was overwhelming record evidence that his trial counsel was not aware that he had grounds for an "automatic" mistrial. Escobedo argues that, in light of his entitlement to an "automatic" mistrial, his trial counsel had a duty to ensure that his

waiver of a mistrial was knowing and voluntary, but the record shows that his trial counsel failed to take any steps to fulfill that duty.

As I read this objection, it is to Judge Strand's review of underlying factual findings by the Iowa Court of Appeals, in that Escobedo contends that certain "findings" by the Iowa Court of Appeals were not "fairly supported" by the record. In essence, it requires *de novo* consideration of whether the determination by the Iowa Court of Appeals on the factual issues identified was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," within the meaning of § 2254(d)(2). On *de novo* review of Judge Strand's ruling, I must "presume the [state] court's factual findings to be sound unless [Escobedo] rebuts the 'presumption of correctness by clear and convincing evidence,'" *Miller-El*, 545 U.S. at 240 (quoting 28 U.S.C. § 2254(e)(1)), and I must be convinced that the state court's determination was not only "incorrect," but "unreasonable." *Schriro*, 550 U.S. at 473.

This objection is to the following portion of Judge Strand's Report And Recommendation:

> The Iowa Court of Appeals did not unreasonably apply *Strickland* in concluding that Escobedo's attorney made a reasonable strategic decision to proceed with an alternate juror and forego a mistrial motion. The court's findings concerning [Escobedo's and Herrarte's trial counsels'] testimony refute Escobedo's arguments that his attorney did not know a mistrial was an option or that it was inconsistent for his attorney to forego a mistrial motion when he had moved for one the day before. Even if the attorneys did not know they were entitled to an automatic mistrial, as Escobedo argues, the testimony clearly establishes that they evaluated a mistrial as an option and made a strategic decision not to pursue it. A determination of factual issues made by a State court shall be presumed to be correct by the federal courts and is binding in a section 2254 action if fairly supported by the record, unless rebutted

by clear and convincing evidence of error. 28 U.S.C.
§ 2254(e)(1); *Summer v. Mata*, 449 U.S. 539, 101 S. Ct.
764, 66 L. Ed. 2d 722 (1981). Escobedo has not rebutted
the presumption.

Report And Recommendation at 13-14.

Considering, first, the findings actually made by the Iowa Court of Appeals and considered by Judge Strand, I cannot conclude that the Iowa Court of Appeals unreasonably determined, in light of the evidence in the record before it, that Escobedo's trial counsel was aware that a mistrial was an "option." *See* 28 U.S.C. § 2254(d)(2). Nor can I conclude that the Iowa Court of Appeals unreasonably determined, in light of the evidence in the record before it, that trial counsel discussed that "option" with Escobedo. *Id.* On *de novo* review of the Report And Recommendation as to these issues, I conclude that, even if Escobedo's and Herrarte's trial counsels' testimony did not absolutely refute Escobedo's arguments that trial counsel did not know a mistrial was an option, *see* Report And Recommendation at 14, the Iowa Court of Appeals, like the Iowa District Court, could reasonably have determined, from the evidence before it, that his trial counsel's testimony that he did discuss the issue with Escobedo was more credible, even if Escobedo did not remember trial counsel discussing the issue with him. Post-Conviction Relief Ruling at 4-5; *Escobedo*, 695 N.W.2d 333, 2004 WL 2804848 at *2 (appellate court decision pointing out that trial counsel "noted that he had discussed the decision with both his client and co-counsel"). I reach this conclusion with great hesitation, however, because there is nothing in the record that indicates that there was time for trial counsel to discuss the options with Escobedo. Moreover, one would think that, if trial counsel had consulted with his client on the matter, he would have made a record of doing so, either by a statement on the record during trial or in his own contemporaneous notes on the case.

Neither the trial transcript nor trial counsel's contemporaneous notes include even a scintilla of evidence that trial counsel actually consulted with Escobedo.

The much bigger problem here, however, is that—for reasons stated below, in my analysis of Escobedo's third objection—on *de novo* review, I part company with both Judge Strand and the Iowa Court of Appeals in their framing of either the factual or legal issue as whether Escobedo's trial counsel knew that a mistrial was an "option." The proper question was whether his trial counsel knew that Escobedo was entitled to an "automatic" mistrial, because the trial judge could not properly replace a trial juror after deliberations had begun. As a matter of *fact*, Escobedo has rebutted by clear and convincing evidence any finding that his trial counsel knew that he was entitled to an "automatic" mistrial. *See Miller-El*, 545 U.S. at 240 (imposing this burden of proof on the petitioner to overcome factual findings under § 2254(d)(2)). Escobedo has pointed to the following uncontroverted testimony of his trial counsel in the post-conviction relief proceedings, which Escobedo argues shows that his trial counsel did not know that he was entitled to an "automatic" mistrial:

> As I recall, during the fluidity of the trial proceedings, I think we were discuss[ing] our options. I don't know that anybody went back and took a look at the rules of criminal procedure that I'm looking at, the morning of the event. I believe I went back to those rules when the appeal came back to me and that's when I discovered there was a rule on, I believe, the dismissal of alternate jurors.

Post-Conviction Relief Trial Transcript 68 (State Court Documents 4(d), App. 474). Similarly, because trial counsel plainly did not know that Escobedo was entitled to an "automatic" mistrial in the circumstances presented, any discussion that trial counsel had with Escobedo about his "options," in light of the problem with the trial juror, could not have been about Escobedo's right to an "automatic" mistrial.

Therefore, to the extent that Escobedo's first objection is that Judge Strand failed to conclude that the Iowa Court of Appeals unreasonably determined that Escobedo's trial counsel was aware that a mistrial was an "option" and that trial counsel discussed that "option" with Escobedo, Escobedo's first objection is overruled.  On the other hand, to the extent that Escobedo's first objection is that Judge Strand and the Iowa Court of Appeals considered the wrong facts and/or that Judge Strand failed to conclude that the Iowa Court of Appeals unreasonably determined that Escobedo's trial counsel was aware that Escobedo was entitled to an "automatic" mistrial and discussed an "automatic" mistrial with Escobedo, Escobedo's first objection is sustained.

### 3. Escobedo's second objection: mistaking a legal determination for a factual finding

Escobedo's second objection is that "Judge Strand erred in finding that the 'strategic decision' not to object to [failure to grant] an automatic mistrial was a 'finding of fact' subject to deference under 28 U.S.C. § 2254(e)(1)."  Escobedo concedes that the question of whether his trial counsel knew about the legal possibility of an "automatic" mistrial is likely a factual question subject to scrutiny under § 2254(e), but he argues that the strategy supporting a failure to seek a mistrial relates to the "deficient performance" prong of the *Strickland* analysis, and, as such, it is a mixed question of law and fact not entitled to any deference under § 2254(e).  Thus, he contends that, to the extent that Judge Strand evaluated the strategic decision not to seek a mistrial as a "question of fact" subject to deference, Judge Strand applied the wrong standard of review, because he should have considered the reasonableness of the application of *Strickland* to the facts under § 2254(d)(1).

This objection focuses on two sentences from the same part of Judge Strand's Report And Recommendation quoted above:

> Even if the attorneys did not know they were entitled to an automatic mistrial, as Escobedo argues, the testimony

46

> clearly establishes that they evaluated a mistrial as an option
> and made a strategic decision not to pursue it. A
> determination of factual issues made by a State court shall be
> presumed to be correct by the federal courts and is binding
> in a section 2254 action if fairly supported by the record,
> unless rebutted by clear and convincing evidence of error.
> 28 U.S.C. § 2254(e)(1); *Summer v. Mata*, 449 U.S. 539,
> 101 S. Ct. 764, 66 L. Ed. 2d 722 (1981).

Report And Recommendation at 14. However, this time, the objection is not to a factual determination in light of the record evidence, within the meaning of § 2254(d)(2), but to treating a *legal* determination as a *factual* determination.

I conclude that this objection misapprehends the larger context of the cited comments in the Report And Recommendation. In the paragraph from which the two challenged sentences are taken, Judge Strand rightly considered whether there was a reasonable basis in the record for the *factual* determinations by the Iowa Court of Appeals about whether trial counsel at least knew that a mistrial was an "option" and whether trial counsel had any "strategic" or "tactical" basis for his decision not to pursue a mistrial. *See* Report And Recommendation 13-14; *see also, supra*, beginning on page 17 (quoting the pertinent part of the Report And Recommendation in its entirety). In the *next* paragraph of the Report And Recommendation, Judge Strand properly considered whether knowledge of the "option" of a mistrial and the "strategic decision" not to pursue a mistrial amounted to "deficient performance," because he assessed whether "[t]he Iowa Court of Appeals also reasonably applied *Strickland*" in determining that there was no "deficient performance." *Id*. at 14; *see also, supra*, beginning on page 17 (quoting the pertinent part of the Report And Recommendation in its entirety). To put it another way, Judge Strand properly applied § 2254(d)(2) and § 2254(e) deference to factual findings concerning what happened and why, then properly considered whether the Iowa Court of Appeals reasonably applied *Strickland*

in deciding that what happened and why did not amount to "deficient performance" under § 2254(d)(1).

This objection is overruled.

### 4. Escobedo's third objection: unreasonable application of Strickland

Escobedo's third objection is that, "assuming defense counsel was aware that he had an automatic mistrial in hand, Judge Strand erred in finding that the Iowa Court of Appeals' assessment of deficient performance was reasonable under *Strickland.*" This is far and away Escobedo's most critical objection to the Report And Recommendation.

#### a. Escobedo's argument

In support of this objection, Escobedo argues that, one day before the juror replacement issue came up, when his trial counsel challenged improper closing arguments by the prosecutor, his trial counsel "was practically begging the court for a new trial," but the very next day, when trial counsel had a right to an "automatic" mistrial, trial counsel "demurred." He argues that the only reasonable explanation is that trial counsel simply did not know that he had grounds for an "automatic" mistrial, and that, even if he did know, failing to ask for an "automatic" mistrial made no sense in light of the racially-infected tone of the entire trial and the state's repeated attempts to invoke racial prejudice during closing arguments. He points out that there is evidence that the remaining jurors thought that the dismissal of one juror for racist remarks was hilarious. He also contends that this was not a case in which the application of a rule involved a balancing of factors, such as the balance of the probative value of evidence against its potential for unfair prejudice under Rule 403 of the Federal Rules of Evidence, but a case in which application of the rule was straight-forward: A mistrial was required, and counsel had but to ask for it. He also argues that the Iowa Court of Appeals could not reasonably have determined that trial counsel

made a reasonable "strategic" decision, when trial counsel did not even know that the circumstances permitted an "automatic" mistrial. He contends that the Iowa Court of Appeals, and Judge Strand on review, improperly characterized a clear "mistake" as a "strategic decision." He contends that the startling ignorance of the law displayed by his trial counsel is evidence of objectively deficient performance.

### b. Application of the "deficient performance" standards

As I explained in more detail, above, "[t]he performance prong of *Strickland* requires a defendant to show '"that counsel's representation fell below an objective standard of reasonableness,"'" *Lafler*, ___ U.S. at ___, 132 S. Ct. at 1384 (quoting *Hill v. Lockart*, 474 U.S. 52, 57 (1985), in turn quoting *Strickland*, 466 U.S. at 688); in evaluating counsel's performance, the reviewing court must not overlook "'the constitutionally protected independence of counsel and . . . the wide latitude counsel must have in making tactical decisions,'" *Cullen*, ___ U.S. at ___, 131 S. Ct. at 1406 (quoting *Strickland*, 466 U.S. at 589); and the reviewing court "'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id*. at 1407 (quoting *Strickland*, 466 U.S. at 689–90). I now add that a determination of whether or not a decision by trial counsel constituted "deficient performance" depends upon whether the decision was made after a reasonable investigation of the law and the facts. *See Strickland*, 466 U.S. at 690–91 ("[S]trategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."); *and compare Wiggins*, 539 U.S. at 527 ("*Strickland* does not establish that a cursory investigation automatically justifies a tactical decision. . . . Rather, a reviewing court must consider the reasonableness of the investigation said to support that strategy."); *Armstrong v.*

*Kemna*, 534 F.3d 857, 864-65 (8th Cir. 2008) ("[S]trategic choices 'resulting from lack of diligence in preparation and investigation [are] not protected by the presumption in favor of counsel.'" (quoting *Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir. 1991), and also citing *Wiggins*, 539 U.S. at 527)).

It follows from these standards that the Iowa Court of Appeals unreasonably applied *Strickland* where that court never considered trial counsel's error to be *failure to ask for an "automatic" mistrial*. That is, "'there was no reasonable basis for' the [state court's] decision," *Cullen*, ___ U.S. at ___, 131 S. Ct. at 1402 (quoting *Richter*, 562 U.S. at ___, 131 S. Ct. at 786), where the state court simply overlooked the actual error by trial counsel.

Here, as I explained above, in my analysis of Escobedo's first objection, as a matter of *fact*, Escobedo has rebutted by clear and convincing evidence any finding that his trial counsel knew that he was entitled to an "automatic" mistrial; indeed, Escobedo has shown that his trial counsel admitted never examining the applicable rules concerning replacement of a juror and the requirement of a mistrial if a juror is lost after deliberations start until he filed Escobedo's appeal. *See Miller-El*, 545 U.S. at 240 (imposing a "clear and convincing evidence" burden of proof on the petitioner to overcome factual findings under § 2254(d)(2)). That being so, under no reasonable application of *Strickland* could a court conclude that trial counsel performed adequately, where trial counsel's purportedly "strategic" decision to forgo a mistrial was made after *no* investigation of the applicable law, which was—and had been for some time—that a trial juror could be replaced only "before the jury retires," but not after, and once a juror was removed, the defendant could either take the mistrial to which he was entitled, or waive his right to be tried by a jury of twelve and agree to the remaining jurors rendering a verdict. *Escobedo*, 573 N.W.2d at 276 & n.2 (citing former Iowa R. Crim. P. 17(15), now Iowa R. Crim. P. 2.18(15), and *State v. Browman*, 182

N.W. 823, 833-34 (1921)); *see also Strickland*, 466 U.S. at 690–91 ("[S]trategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."); *Wiggins*, 539 U.S. at 527 ("[A] reviewing court must consider the reasonableness of the investigation said to support that strategy."); *Armstrong*, 534 F.3d at 864-65 ("[S]trategic choices 'resulting from lack of . . . investigation [are] not protected by the presumption in favor of counsel.'" (citing *Wiggins*, 539 U.S. at 527)). Indeed, this is a case in which trial counsel's "strategic choice" not to seek a mistrial is not protected by the presumption in favor of counsel, because that "strategic choice" resulted from a complete lack of awareness or investigation of the legal ramifications of removing a juror after deliberations had started.

In this case, it appears that no one—neither the two defense counsel, the prosecutor, nor the trial judge—even took the time to review the Iowa Rules of Criminal Procedure to determine whether there were any limitations on replacement of a trial juror after deliberations had begun. Although both the Iowa courts described Escobedo's trial counsel as "experienced," *Escobedo*, 695 N.W.2d 333, 2004 WL 2804848 at *2, or "highly experienced," Post-Conviction Relief Ruling at 3-4, it does not seem to me to be too much to ask of "experienced" trial counsel, or even to ask of "novice" trial counsel, that they check the rule applicable to replacement of a juror, where, as here, the proceedings on the report of juror misconduct certainly compelled counsel to do so.

Absent any presumption in favor of trial counsel, the reasonableness of the purportedly "strategic" basis for the decision to forgo a mistrial in this case is seriously undermined by at least three specific circumstances. First, trial counsel had sought a change of venue prior to trial based on unfavorable publicity indicating racial prejudice in the community. *See Escobedo*, 573 N.W.2d at 275-76. The opportunity to obtain

an "automatic" mistrial, particularly in circumstances indicating that a trial juror harboring racial bias had, in fact, been seated, would have reopened the possibility of a change of venue and trial by a jury less likely to be tainted by racial prejudice. There is no indication that Escobedo's trial counsel even considered that possibility in deciding whether or not to move for a mistrial. Trial counsel only recognized the impact of the biased juror on the venue issue very belatedly, when he prepared Escobedo's direct appeal. *See id.* at 276 (noting that Escobedo's counsel argued on appeal that his case illustrates the impropriety of relying upon voir dire examination to expose prejudice in publicized cases because jurors can be dishonest in their responses to the questions, and prejudice should be presumed when a biased juror actually becomes part of the jury).

Second, the trial transcript does not indicate that any break was taken, or that trial counsel requested any break, to allow trial counsel to discuss or consider with Escobedo or co-counsel what to do after the trial judge announced his intention to replace the biased juror with an alternate; instead, trial counsel (for both Escobedo and his co-defendant) simply acquiesced. I concluded—*supra*, beginning at page 44—that the Iowa Court of Appeals had not unreasonably determined, in light of the evidence in the record before it, that trial counsel discussed the "option" of a mistrial with Escobedo, but that Escobedo has rebutted by clear and convincing evidence any finding that his trial counsel knew that he was entitled to an "automatic" mistrial, so that any discussion that trial counsel had with Escobedo about his "options," in light of the problem with the trial juror, could not have been about Escobedo's right to an "automatic" mistrial. As to the more specific issue of replacement of the trial juror with an alternate, on Escobedo's appeal of the denial of post-conviction relief, the Iowa Court of Appeals observed, "While Escobedo and Herrarte assert that there was no opportunity for counsel to consult with them before they 'acquiesced' to the seating of

the alternate juror, the record does not indicate whether there was a pause in the proceedings or what may have previously transpired off the record." *Escobedo*, 695 N.W.2d 333, 2004 WL 2804848 at *2 n.1. There were some pauses, of unknown duration, during the proceedings to investigate the juror's alleged bias.[12] What is conspicuously absent from the transcript, however, is any indication of any pause at all between the trial judge's announcement of his intention to replace the trial juror with an alternate and Escobedo's trial counsel's acquiescence. *See id.* at 14 (State Court Documents 4(d), Appendix on Post-Conviction Relief Appeal at 408) ("THE COURT: I intend to use an alternate, [alternate's name]. [ESCOBEDO'S COUNSEL]: Yes. [HERRARTE'S COUNSEL]: Mm-hmm.").

Thus, while there may be sufficient basis to conclude that trial counsel discussed the "option" of a mistrial with Escobedo and co-counsel, there is a dearth of evidence that trial counsel ever discussed or considered the option of *replacing the juror with an alternate*—let alone any evidence that trial counsel discussed and considered the "option" of replacing the trial juror with an alternate in comparison with the legally proper options of an "automatic" mistrial or continuation of deliberations with eleven jurors. Moreover, there is no express confirmation by trial counsel, on the record, that trial counsel had discussed with Escobedo what trial counsel believed the options were

---

[12] I note that the trial transcript does not indicate the length of any pause while the allegedly biased juror was brought from the jury room for questioning, *see* Trial Transcript, September 22, 1995, at 4-6 (State Court Documents 4(d), Appendix on Post-Conviction Relief Appeal at 398-400); the transcript indicates only that "[a] recess," of unknown duration, "was taken" to get the reporting person on the telephone to testify, *see id.* at 7 (State Court Documents 4(d), Appendix on Post-Conviction Relief Appeal at 401); and the trial transcript indicates that "[t]here was an off-the-record discussion," again of unknown duration, after the conclusion of the reporting person's testimony, *see id.* at 12 (State Court Documents 4(d), Appendix on Post-Conviction Relief Appeal at 406).

and that Escobedo agreed to continuing deliberations with an alternate juror.[13]  The lack

of reflection and consultation before acquiescing in the replacement of the biased juror,

particularly where trial counsel plainly did not know or review the applicable rule of

criminal procedure and had done no independent investigation or research of the

question of whether the juror could be replaced with an alternate, undermines any

reasoned "strategic" basis for trial counsel's acquiescence in replacement of the biased

juror instead of seeking a mistrial.

Third, trial counsel made no reasonable attempt to determine the extent to which

the excused juror's racial bias may have tainted the remaining jurors.  This failure is

multifaceted.

Unlike trial counsel, the trial judge recognized the possibility of further taint, in

his questioning of the allegedly biased juror, prior to excusing her, when he observed,

"[I]f [you were in a bar, inebriated, and making racial comments,] I want to know

because those kinds of things are things that taint a jury and make it necessary to retry

the whole thing."  Trial Transcript, September 22, 1995, at 5 (State Court Documents

4(d), Appendix on Post-Conviction Relief Appeal at 399).[14]  The excused juror asserted

---

[13] I acknowledge that the Eighth Circuit Court of Appeals has read United States Supreme Court precedent as giving counsel the authority to make a "strategic" decision about whether or not to request a mistrial, rather than giving the client the authority to make that decision as one of the "fundamental choices" of a criminal defendant.  *See United States v. Washington*, 198 F.3d 721, 723-25 (8th Cir. 1999) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).  Nevertheless, it seems to me that reasonably competent counsel would make a record of a defendant's agreement to continuing deliberations with an alternate juror.  *See id*. at 723-24 (stating that a defendant must always make the ultimate decision about waiving a jury trial); *Escobedo*, 573 N.W.2d at 276 n.2 ("A defendant, of course, may waive the requirements and be tried by a jury of less than twelve.").

[14] Of course, the trial judge making such an observation *to the allegedly biased juror* may well have affected her responses to questions about her conduct.

that she was at the bar only to cash a check, stayed no longer than it took to do so, and denied making any racist comments while there. *Id.* at 4-6 (State Court Documents 4(d), Appendix on Post-Conviction Relief Appeal at 398-400). Nevertheless, the excused juror's racial bias was supported by the testimony, during the same hearing, of the person who reported her to the prosecutor:

> [A:] And she just said that—that she thought the attorneys were a bunch of idiots. That was what her words were. I may be somewhat paraphrasing. She said, "They never even asked the question of whether I was prejudiced or racist."
>
> And she said, "If they would have asked me that," I mean, this is pretty much quoting her, she said, "God damn right out, I would have told them I was." And she started laughing and started talking about this.

Trial Transcript, September 22, 1995, at 9 (State Court Documents 4(d), Appendix on Post-Conviction Relief Appeal at 403). The conflicts between the excused juror's testimony and the reporting person's testimony, *id.* at 7-11 (State Court Documents 4(d), Appendix on Post-Conviction Relief Appeal at 401-405), indicated that either one or the other must have been lying about the biased juror's presence at the bar, the amount of time and/or the purpose for which she had gone to the bar, and any of her racist comments, but nothing suggests that the reporting person had any reason to lie. The trial judge did not make any explicit finding that the allegedly biased juror lied, but one can infer from the trial judge's statement immediately after the reporting person testified that "[p]erhaps we should dismiss the juror," *id.* at 12 (State Court Documents 4(d), Appendix on Post-Conviction Relief Appeal at 406), that the trial judge did believe that the allegedly biased juror was lying. Certainly, from my independent review of the record, it is clear to me that the allegedly biased juror was not telling the

truth about her presence at the bar, the amount of time and/or the purpose for which she had gone to the bar, and any of her racist comments while there.

Ironically, the reporting person also recognized the significance of the biased juror's conduct as potentially affecting the whole trial, more so than either of the defense lawyers and perhaps even more than the trial judge. She testified:

> [A:] And I—I kind of kicked my husband underneath the table, because I kind of, you know, I thought, well, what in the world is she talking about this for, for one thing, and why do they have her on the jury if—if she has such strong feelings, you know.
>
> * * *
>
> That's when I called [the prosecutor] to find out if she really was [on the jury], or if she was just saying this stuff. But I guess I had concerns that if she really is on the jury and she's racist or prejudiced, how is that going to affect the outcome of this, you know?

Trial Transcript, September 22, 1995, at 10-11 (State Court Documents 4(d), Appendix on Post-Conviction Relief Appeal at 404-05).

Notwithstanding the significance of the problems posed by seating of a biased juror, trial counsel engaged in no adequate investigation of possible taint of the rest of the jurors. After the trial judge announced his intention to excuse the juror, the following exchange occurred between Herrarte's trial counsel (not Escobedo's trial counsel) and the trial judge:

> [HERRARTE'S COUNSEL]: I will have no problem with [dismissing the juror]. I also ask that because after [the juror] went up to the jury room [after questioning by the court], I heard lots of laughter coming from the jury room that we somehow question the remaining jurors to see if they discussed with her what happened in chambers. And if they did, what she said.

> THE COURT:  Okay.
>
> [HERRARTE'S COUNSEL]:  Obviously her calling us a bunch of idiots suggested to me that she did not take the court's first instructions of them that race had no part in this case very seriously.  And if other jurors heard her say that, I clearly am concerned about the [e]ffect on this trial.

Trial Transcript, September 22, 1995, 12-13 (State Court Documents 4(d), Appendix on Post-Conviction Relief Appeal, 406-07).   However, after dismissing the biased juror, the only question that the trial judge asked the remaining jurors was the following:

> THE COURT:  Prior to this present hearing, I had an in camera hearing with [the dismissed juror].  The Court would inquire as to whether she discussed that with you when she came back.

Trial Transcript, September 22, 1995, 13 (State Court Documents 4(d), Appendix on Post-Conviction Relief Appeal, 407).   No response from the remaining jurors is indicated in the trial transcript, and trial counsel for both defendants declined the opportunity to ask any further questions of the remaining jurors.  *Id.*

This single question by the trial judge was both the wrong question and such an inartful question that it could provide no meaningful information about possible taint of the rest of the jurors.  A single question about whether the biased juror had discussed *the hearing* leading to her dismissal with any other jurors falls well short of any reasonable attempt to investigate whether the dismissed juror had made racially-biased *comments* to the remaining jurors or to determine whether any of them were tainted by such comments.  To put it another way, that single question only addressed what the biased juror said when she was sent back to the jury room after being questioned by the court, but the issue of greatest concern was whether or not she had tainted the rest of

the jurors with comments that she had made during the two weeks of the trial and the previous day's deliberations.

In addition to being the wrong question, the question asked by the trial judge was so inartful that it could not extract any useful information. I doubt that any jurors would understand what an "in camera hearing" was, without some further explanation, so that I believe that the trial judge's single question was further fatally flawed, because it seems unlikely to me that the other jurors would understand what hearing the trial judge meant. More specifically, where the trial judge's question was, "Prior to this present hearing, I had an in camera hearing with [the dismissed juror]. The Court would inquire as to whether she discussed *that* with you when she came back," Trial Transcript, September 22, 1995, 13 (State Court Documents 4(d), Appendix on Post-Conviction Relief Appeal, 407) (emphasis added), the "that" to which the trial judge referred had to be "an in camera hearing." If jurors did not know what "an in camera hearing" was, they inevitably would not respond to this question.

Because the trial judge's question was both the wrong question and an inartful question, the trial judge's question was the equivalent of doing nothing to investigate whether other jurors were tainted by comments of the biased juror.

Despite the fatal flaws in the trial judge's single question, trial counsel for both defendants declined the opportunity to ask any further questions of the remaining jurors. Trial Transcript, September 22, 1995, 13 (State Court Documents 4(d), Appendix on Post-Conviction Relief Appeal, 407). Trial counsel failed to take the opportunity to ask the panel as a whole if any other jurors had heard biased comments by the removed juror, then follow-up with individual questioning of any juror who indicated exposure to biased comments by the removed juror. Similarly, although Herrarte's trial counsel had pointed out that the other jurors were heard laughing after the biased juror returned to the jury room after questioning, neither Herrarte's nor

58

Escobedo's trial counsel made any attempt to investigate that incident. Trial Transcript, September 22, 1995, 12-13 (State Court Documents 4(d), Appendix on Post-Conviction Relief Appeal, 406-07). Trial counsel did not even attempt to investigate whether the first alternate juror had been exposed to biased comments of the removed juror during the trial. In the circumstances of this case, trial counsel's failure to investigate further whether any other jurors were tainted by the removed juror's bias was, itself, deficient performance. Certainly, the failure to explore the possible taint of other jurors, in the circumstances presented, was another failure to investigate that demonstrated that the decision not to seek a mistrial and to continue deliberations with the remaining jurors plus an alternate was not a reasonable "strategic" one.[15]

As Escobedo contends, in this case, as in *Kimmelman v. Morrison*, 477 U.S. 365 (1986), trial counsel's justifications "betray a startling ignorance of the law," because they show that he did not know that he was *entitled* to a mistrial and had not

---

[15] In the almost 19 years that I have been a federal district court judge in the Northern District of Iowa, and more particularly, sitting in the northwest corner of Iowa, in the division including Sioux County, where Escobedo was originally tried, a heavy share of my criminal caseload has involved Hispanic defendants. For example, reports generated from the CM/ECF system indicate that, in the last five years, in cases assigned to me, 299 criminal defendants in the Northern District of Iowa, including 197 in the Western Division (*i.e.*, northwest Iowa), have required interpreters, and a review by a member of my staff indicates that all but one of those defendants required Spanish interpreters (the lone exception required a Laotian interpreter). Of course, many Hispanic defendants do not require an interpreter. My anecdotal experience has been that, in nearly every case—if not every case—in which a Hispanic defendant has gone to trial, one or more prospective jurors have indicated during voir dire that they did not believe that they could be fair to a Hispanic defendant. Thus, I have every reason to believe that anti-Hispanic bias is a problem in northwest Iowa and that adequate questioning of prospective jurors is critical to reveal that bias. I also have every reason to believe that further follow-up by Escobedo's trial counsel of possible taint of the remaining jurors and the alternate juror, after the biased juror was removed, was necessary to meet the Sixth Amendment standard for effective assistance of counsel.

investigated the applicable law at all, so that no reasonable decision could have been made. 477 U.S. at 385. Moreover, the attempt by the Iowa Court of Appeals to recast the issue as whether trial counsel at least knew that a mistrial was an "option" is an unreasonable application of *Strickland*, because where trial counsel did not investigate the applicable law, he could not know what his real "options" were and could not have made a reasonable choice between them. *Cf. Kimmelman*, 477 U.S. at 386-87 (where trial counsel did not investigate what discovery he could do, he could not know what the state's case would be, and the adequacy of his performance in other aspects "shed[ ] no light on the reasonableness of counsel's decision not to request any discovery"). In point of fact, the "options" that Escobedo and his trial counsel should have considered, had his trial counsel known that, under Iowa law, a juror could not be replaced after deliberations had started, were either an "automatic" mistrial or Escobedo's waiver of his right to a jury of twelve persons and agreement to be tried by a jury of less than twelve, not whether to seek a "possible" mistrial or to allow a trial juror to be replaced with an alternate juror. *Escobedo*, 573 N.W.2d at 276 n.2.

Because the Iowa Court of Appeals unreasonably applied *Strickland* to the "deficient performance" prong, Escobedo is entitled to a *de novo* determination by this court of whether or not his trial counsel performed deficiently in the manner that he actually alleged. *See Richter*, ___ U.S. at ___, 131 S. Ct. at 770 (stating that § 2254(d)(1)'s exception "permit[s] relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law"); *see also, supra*, § II.B.2.c, beginning at page 33. For essentially the same reasons that I concluded that the decision of the Iowa Court of Appeals on the "deficient performance" prong was an "unreasonable application" of *Strickland*, within the meaning of § 2254(d)(1), I also conclude, on *de novo* consideration, that Escobedo has demonstrated that his trial counsel performed "deficiently" within the meaning of *Strickland*. Trial counsel

performed deficiently in forgoing an "automatic" mistrial, because he did not even know that was an option, where he did not know and had not investigated, at all, the consequences of removing a juror after deliberations had started; he engaged in only insufficient consultation with either his co-counsel and his client, if he consulted with his client at all, before making a decision to allow the dismissed juror to be replaced with an alternate juror, where he had not, himself, investigated the applicable law adequately to understand the appropriate options; he did not make any attempt to determine whether the biased juror had tainted the remaining jurors; he did not recognize the implications of a mistrial based on proof that a seated juror had been racially biased as providing a renewed opportunity to obtain a change of venue and a trial before a jury less likely to be biased; and he did not recognize that the proper alternatives were an "automatic" mistrial or his client's waiver of a verdict by twelve jurors and agreement to a verdict by the remaining eleven jurors. *See Escobedo*, 573 N.W.2d at 276 and n.2.

Therefore, Escobedo's third objection is sustained, and the portion of Judge Strand's Report And Recommendation recommending that I find that the Iowa Court of Appeals reasonably concluded that there was no deficient performance is rejected. I conclude that the Iowa Court of Appeals unreasonably applied *Strickland* in its determination that Escobedo had failed to show deficient performance, and on *de novo* consideration of that prong of Escobedo's constitutional claim of ineffective assistance of counsel, I find that Escobedo has established that his trial counsel performed deficiently.

### E.    *Escobedo's Objection To The "Prejudice" Analysis*

Escobedo's fourth objection is that "Judge Strand erred in finding reasonable the Iowa Court of Appeals' *Strickland* prejudice analysis." Because I concluded, above,

that Escobedo has established the "deficient performance" prong of his constitutional claim of ineffective assistance of counsel, contrary to the flawed determination by the Iowa Court of Appeals, whether or not Escobedo is entitled to federal *habeas* relief from his conviction turns on my disposition of this objection. *See Wong*, 558 U.S. at 16 ("To prevail on [an ineffective assistance of counsel] claim, [the petitioner] must meet both the deficient performance and prejudice prongs of *Strickland*, 466 U.S. at 686, 104 S. Ct. 2052."). This objection—like Escobedo's first, second, and third objections concerning the "deficient performance" prong—concerns the second and third steps in the § 2254(d) analysis, "'determin[ation of] what arguments or theories supported . . . the state court's decision; and then [determination of] whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court],'" *Wetzel*, ___ U.S. at ___, 132 S. Ct. at 1198 (quoting *Richter*, 562 U.S. at ___, 131 S.Ct. at 786), but this time as to the "prejudice" prong.

     ***1.***      ***The state court's rationale***

I set out the state court's rationale for rejecting Escobedo's ineffective assistance of counsel claim in full, above, beginning at page 13. Therefore, I will reiterate here only the specific part of the state court's rationale for finding that Escobedo was not "prejudiced," even if his trial counsel's performance was "deficient":

> Regardless [of whether or not trial counsel performed deficiently], we further conclude neither Escobedo nor Herrarte can establish prejudice. The evidence against them was strong, including the testimony of various eye witnesses. *There is no reasonable likelihood the result of a second trial would have been any different. We reject the contention that Escobedo and Herrarte need only show there was a reasonable probability the mistrial would have been granted, and not that there was a reasonable probability the ultimate verdict would have been different.* In *Ledezma*, our

> supreme court reasoned that under *Strickland*, "different
> result" requires a reasonable probability that a different
> verdict would have been reached or that the factfinder would
> have possessed a reasonable doubt. *Ledezma [v. State]*, 626
> N.W.2d [134,] 134 [(Iowa 2001)].

*Escobedo*, 695 N.W.2d 333, 2004 WL 2804848 at *2 (emphasis added).

### 2.    Escobedo's argument

Escobedo argues that the Iowa Court of Appeals made an "elementary error" in its analysis of the "prejudice" prong of his constitutional claim of ineffective assistance of counsel, and Judge Strand erred by finding that such an error was not unreasonable. Specifically, he argues that the Iowa Court of Appeals "unreasonably applied" *Strickland*, when it determined that, even if counsel had performed adequately, there was "no reasonable likelihood the result of a second trial would have been any different," and rejected his contention that he need only show that there was a reasonable probability that the mistrial would have been granted.  He argues that there is nothing in *Strickland* suggesting that, when trial counsel fails to assert a procedural right entitling the defendant to a specific remedy, the reviewing court, in determining "prejudice," can then skip ahead and simply assess whether the jury would have convicted the defendant even if the right had been asserted, or that the reviewing court must speculate on the outcome of a second trial, as the Iowa Court of Appeals did.  To the contrary, he argues that *Strickland* and its progeny in the Supreme Court have all assessed "prejudice" in terms of the effect of trial counsel's error on the proceedings in which the error occurred and the specific right lost.

### 3.    Analysis

The Iowa Court of Appeals held that Escobedo could not show "prejudice," because there was "no reasonable likelihood that the result of a second trial would have been any different."   Likewise, Judge Strand concluded that "there is no clearly

established federal law for the prejudice standard regarding an attorney's failure to request a mistrial under these circumstances," and that "the Iowa Court of Appeals did not unreasonably apply *Strickland* or unreasonably fail to extend federal law in requiring Escobedo to demonstrate a reasonable probability that a different verdict would have been reached in a second trial." Report And Recommendation 18. I conclude, however, that the Iowa Court of Appeals unreasonably applied *Strickland*, within the meaning of § 2254(d)(1), by failing to make a context-specific determination of "prejudice." That is, the Iowa Court of Appeals "unreasonably refuse[d] to extend th[e] principle [of context-specific determination of 'prejudice'] to a new context where it should apply." *Williams*, 529 U.S. at 407 (O'Connor, J., writing for the majority) (explaining that this is one way in which a state court decision can involve "unreasonable application" of federal law).

### a.    Context-specific determination of "prejudice"

Where a petitioner asserts that counsel's ineffective assistance concerned whether or not to do something as a matter of strategy—such as whether to accept or to reject a plea offer—the Supreme Court has framed the test for "prejudice" as whether the outcome—the decision to accept or reject a plea offer—"would have been different with competent advice." *Lafler*, ___ U.S. at ___, 132 S. Ct. at 1384 (considering a claim of ineffective assistance of counsel in giving advice in the context of plea negotiations, and explaining that, in this context, "a defendant must show the outcome of *the plea process* would have been different with competent advice" (emphasis added)). More specifically still, in *Lafler*, where the petitioner asserted that deficient advice led him to reject a plea offer, he was required to "show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would

have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id*. at ___, 132 S. Ct. at 1384-85

Indeed, the principle that a determination of "prejudice" under *Strickland* must be context-specific was well-established long before *Lafler*. In *Strickland*, itself, the Supreme Court also made clear that the context of counsel's errors matters to the assessment of prejudice, as to whether the "probability of a different outcome" relates to the conviction or to the sentence, as follows:

> The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors. *When a defendant challenges a conviction*, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. *When a defendant challenges a death sentence* such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.
>
> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. . . .

*Strickland*, 466 U.S. at 695 (emphasis added).

Since *Strickland*, the Supreme Court has repeatedly identified context-specific formulations of prejudice. *See Frye*, ___ U.S. at ___, 132 S. Ct. at 1409-10 ("In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial,'" quoting *Hill*, 474 U.S. at 59, *but* holding that "where

a defendant pleads guilty to less favorable terms and claims that ineffective assistance of counsel caused him to miss out on a more favorable earlier plea offer, *Strickland*'s inquiry into whether 'the result of the proceeding would have been different,' 466 U.S., at 694, 104 S.Ct. 2052, requires looking not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plead pursuant to the terms earlier proposed"); *Cullen*, ___ U.S. at ___, 131 S. Ct. at 1408 (considering a claim of ineffective assistance in the penalty phase of capital proceedings, and explaining that the "prejudice" question was "'whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death'" (quoting *Strickland*, 466 U.S. at 695)); *Hill*, 474 U.S. at 59 (considering a claim of ineffective assistance in the plea process and explaining, "The . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome *of the plea process*" (emphasis added)).

In other words, it is a well-established principle of Supreme Court law that the "probability of a different outcome" must be considered in the context of the specific errors of counsel that are alleged. Thus, while the Iowa Supreme Court may properly have held in *Ledezma v. State*, 626 N.W.2d 134 (Iowa 2001), that the standard for "prejudice" from trial counsel's deficient performance in failing to investigate and present evidence and refusing to call the defendant to testify to support a theory of defense was whether there was a "reasonable probability of a different verdict, or that the fact finder would have possessed reasonable doubt," 626 N.W.2d at 144, that is not the proper standard in *all* cases. It is only when the allegedly deficient performance concerns the evidence that defense counsel should have developed and presented, or should *not* have developed and presented, that the ultimate outcome of the proceedings, that is, the conviction or the sentence, is the "outcome of the proceedings" at issue, and

only then that "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695.

### b.     *Failure to apply the principle in a new context*

Escobedo squarely presented to the Iowa Court of Appeals, on his appeal of the denial of his claim for post-conviction relief, an argument that the applicable standard for "prejudice" on his ineffective assistance of counsel claim was whether there was a reasonable probability that the mistrial would have been granted.  *See Escobedo*, 695 N.W.2d 333, 2004 WL 2804848 at *2 (rejecting Escobedo's argument "that [he] need only show there was a reasonable probability the mistrial would have been granted, and not that there was a reasonable probability the ultimate verdict would have been different").  Where the principle that "prejudice" is a context-specific determination is well-established in Supreme Court law, it is clear that a claim of ineffective assistance of counsel for failing to seek an "automatic" mistrial is "a new context where [that principle of context-specific determination of 'prejudice'] should apply." *Williams*, 529 U.S. at 407 (O'Connor, J., writing for the majority).  Thus, in this case, the "reasonable probability of a different outcome" standard for Escobedo's claim required him to show that there is a reasonable probability that, if his counsel had performed competently, he would have obtained a mistrial.  *Cf. Lafler*, ___ U.S. at ___, 132 S. Ct. at 1384 (considering prejudice on a claim of ineffective assistance based on counsel's allegedly deficient advice concerning the plea process in terms of whether "the outcome of the plea process would have been different with competent advice").  The failure of the Iowa Court of Appeals to extend the well-established principle to this context was an "unreasonable application" of United States Supreme Court precedent within the meaning of § 2254(d)(1).

Therefore, Escobedo's fourth objection is sustained, and that part of Judge Strand's Report And Recommendation recommending that I find that the Iowa Court of

Appeals reasonably concluded that there was no prejudice from trial counsel's deficient performance is rejected.

### c.  De novo *consideration*

Because I have determined that the Iowa Court of Appeals unreasonably applied United States Supreme Court precedent to the "prejudice" prong of Escobedo's ineffective assistance of counsel claim, I must now consider that prong of his claim *de novo.  See Richter*, ___ U.S. at ___, 131 S. Ct. at 770 (stating that § 2254(d)(1)'s exception "permit[s] relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law"); *see also, supra*, § II.B.2.c, beginning at page 33.   Again, for essentially the same reasons that I concluded that the Iowa Court of Appeals unreasonably applied federal law to the "prejudice" prong of Escobedo's claim, I now conclude, on *de novo* consideration of his claim, that the proper question for the determination of whether his trial counsel's deficient performance prejudiced him is whether there is a reasonable probability that, if his counsel had performed competently, he would have obtained a mistrial.   I conclude that there is such a reasonable probability.

First, if trial counsel had requested a mistrial, then such a mistrial would have been "automatic." *See Escobedo*, 573 N.W.2d at 276 n.2.   Because the right to a mistrial was "automatic" here, the likelihood of a mistrial plainly meets the "reasonable probability" standard.

Second, the fact that trial counsel did not seek a mistrial when trial counsel thought a mistrial was only an "option," and instead consented to a verdict being rendered by a twelve-person jury including an alternate, provides little or no insight into what trial counsel would have done if he had properly informed himself that the options were an "automatic" mistrial or obtaining Escobedo's waiver of a verdict by twelve jurors and consent to a verdict by eleven, without the alternate.   To the

contrary, when trial counsel had—admittedly belatedly—determined that replacing a juror after deliberations had begun was not authorized, trial counsel appealed that error, *see* Post-Conviction Relief Trial Transcript 68 (State Court Documents 4(d), App. 474) ("I believe I went back to those rules when the appeal came back to me and that's when I discovered there was a rule on, I believe, the dismissal of alternate jurors."); *Escobedo*, 573 N.W.2d at 276 (addressing this argument on direct appeal), strongly suggesting that he would have asserted it as a ground for a mistrial when the trial judge indicated an intention to replace the juror, had trial counsel timely recognized the error.

Third, although United States Supreme Court precedent suggests that a decision about whether or not to request a mistrial is ordinarily a strategic one for trial counsel, *see Jones v. Barnes*, 463 U.S. 745, 751 (1983) (identifying as "fundamental decisions regarding the case" on which "the accused has the ultimate authority" as "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal," but not identifying a decision about whether or not to seek a mistrial); *see also United States v. Washington*, 198 F.3d 721, 723-24 (8th Cir. 1999) (holding that counsel need not consult with the defendant when making the strategic decision whether or not to request a mistrial, and that, even if the decision belonged to the defendant, the defendant had waived the right to make that decision), whether or not to waive a trial by twelve jurors and to allow a verdict by only eleven jurors appears to be a question that did belong to Escobedo, not his trial counsel, *cf. id.* (stating that a defendant must always make the ultimate decision about waiving a jury trial); *Escobedo*, 573 N.W.2d at 276 n.2 ("A defendant, of course, may waive the requirements and be tried by a jury of less than twelve."). There is absolutely nothing in the record to suggest that Escobedo would have waived his right, under the Iowa Rules of Criminal Procedure, to a verdict by twelve jurors, had he been presented with that option.

Upon *de novo* consideration of Escobedo's ineffective assistance of counsel claim, I conclude—contrary to the determination of the Iowa Court of Appeals—that he has proved the "prejudice" prong of his claim under applicable federal law, as well as the "deficient performance" prong. Consequently, he is entitled to federal *habeas* relief. *See Wong*, 558 U.S. at 16 ("To prevail on [an ineffective assistance of counsel] claim, [the petitioner] must meet both the deficient performance and prejudice prongs of *Strickland*, 466 U.S. at 686, 104 S. Ct. 2052.").

## F. Appropriate Relief

Because Escobedo has established both prongs of his ineffective assistance of counsel claim, I must determine the appropriate relief. Escobedo requests a "new trial." *See* Petitioner's Merits Brief (docket no. 35-1), 21. I believe that no broader relief is required or permissible, except in the circumstances that the respondent fails to initiate new trial proceedings, as ordered below.

## III. CONCLUSION

I take absolutely no pleasure in granting federal *habeas* relief to a state prisoner many years after he was convicted, on more than sufficient evidence, of a brutal murder. However, I cannot tolerate short-circuiting of a criminal defendant's right to counsel, which is the right to *effective* counsel, *Frye*, ___ U.S. at ___, 132 S. Ct. at 1404 (explaining that "[t]he right to counsel is the right to effective assistance of counsel." (citing *Strickland*, 466 U.S. at 686)), simply because there is sufficient evidence of guilt. Were the test of "prejudice" from deficient performance of counsel only and always whether or not there was a reasonable probability of ultimate conviction, the right to counsel would be nugatory for all but innocent defendants. That is not, and has never been, our understanding of the right to counsel or any other

constitutional right of a criminal defendant. *Kimmelman*, 477 U.S. at 380 ("[W]e have never intimated that the right to counsel is conditioned upon actual innocence. The constitutional rights of criminal defendants are granted to the innocent and the guilty alike.").

It is frustrating that there were opportunities to avoid the need for a very belated new trial in this case to ensure fair treatment of the defendant—and opportunities for a constitutionally sound conviction—but they were squandered. The opportunity to prevent the error was lost, first, by the ignorance of the trial attorneys, both defense and prosecution, and then by the trial court, any and all of whom should have recognized that the appropriate options when a trial juror was removed after deliberations had begun were *only* a mistrial or the defendant's waiver of his right to a trial by twelve jurors and agreement to a verdict by the eleven remaining jurors. I can appreciate the fact that they may not have known this off the top of their heads, but this would have been easily discovered by a simple glance at the applicable Iowa rule, former IOWA R. CRIM. P. 17(15) (now IOWA R. CRIM. P. 2.18(15)), by any one of them. Because the federal courts provide the last bulwark for protection of the constitutional rights of state prisoners, and I find a violation of Escobedo's Sixth Amendment right to effective assistance of counsel unreasonably rejected by the Iowa courts, I grant federal *habeas* relief in this case.

THEREFORE,

1.      Petitioner Guillermo Escobedo's October 22, 2012, Objections To Report And Recommendation (docket no. 53) are **sustained in part and overruled in part**, as follows:

      a.      The petitioner's first objection is

            i.      **overruled** to the extent that it is to Judge Strand's failure to conclude that the Iowa Court of Appeals unreasonably determined that

Escobedo's trial counsel was aware that a mistrial was an "option" and that trial counsel discussed that "option" with Escobedo; *but*

ii. **sustained** to the extent that it is to Judge Strand and the Iowa Court of Appeals considering the wrong facts, and/or to Judge Strand's failure to conclude that the Iowa Court of Appeals unreasonably determined that Escobedo's trial counsel was aware that Escobedo was entitled to an "automatic" mistrial and discussed an "automatic" mistrial with Escobedo;

b. The petitioner's second objection is **overruled**;

c. The petitioner's third objection is **sustained**, and the portion of Judge Strand's Report And Recommendation recommending that I find that the Iowa Court of Appeals reasonably concluded that there was no deficient performance is **rejected**; and

d. The petitioner's fourth objection is **sustained**, and the portion of Judge Strand's Report And Recommendation recommending that I find that the Iowa Court of Appeals reasonably concluded that there was no prejudice from trial counsel's deficient performance is **rejected**.

2. I **hold** that

a. the Iowa Court of Appeals unreasonably applied *Strickland*, within the meaning of 28 U.S.C. § 2254(d)(1), in its determination that Escobedo had failed to show deficient performance or prejudice; and

b. upon *de novo* review of Escobedo's constitutional claim, that Escobedo has established that his trial counsel performed deficiently and that trial counsel's deficient performance prejudiced him.

3. Petitioner Guillermo Escobedo's January 10, 2010, Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (docket no.

1), as amended on February 1, 2011, *see* Amended Habeas Petition (docket no. 14), is **granted in part and denied in part**, as follows:

        a.    Petitioner's second, third, and fourth grounds for relief are **denied**, because they were not properly preserved in state court; *but*

        b.    Petitioner's first ground for relief is **granted**, because his trial counsel provided ineffective assistance of counsel in failing to seek an "automatic" mistrial when a trial juror was removed after deliberations had begun; *and*

        c.    The petitioner's request for a new trial is **granted**.

    4.    The respondent shall have **thirty days from the date of this order** within which to initiate new trial proceedings against the petitioner or to appeal this ruling, or **a writ of *habeas corpus* shall issue** requiring the release of petitioner Guillermo Escobedo from the custody of the respondent on the ground that such continued custody is in violation of the Constitution and laws of the United States.

    **IT IS SO ORDERED**.

    **DATED** this 3rd day of June, 2013.

                                    _____
                                      MARK W. BENNETT
                                      U.S. DISTRICT COURT JUDGE
                                      NORTHERN DISTRICT OF IOWA